[File No. 6201.]

DEPOSITORS HOLDING COMPANY, a Corporation, Respondent, v. W. H. BROWN and Mrs. W. H. Brown, Appellants.

(251 N. W. 295.)

Opinion filed November 13, 1933. Rehearing denied December 18, 1934.

*Charles L. Crum* (*O'Hare, Cox & Cox,* counsel) for appellants.
*F. E. McCurdy,* for respondent.

McKenna, District J.   The Depositors Holding Company, a corporation, brings this action to quiet title and to determine adverse claims to a quarter section of land in Burleigh county, North Dakota, described as the southeast quarter of section 34, township 142, range 78.

The evidence discloses that for more than twenty years past the defendants W. H. Brown and Sarah L. Brown, as husband and wife, occupied the land described above as their homestead, and that commencing with the year 1916 and for a number of years thereafter the defendants borrowed considerable sums of money from the City National Bank of Bismarck, North Dakota, sometimes giving their plain

notes and at other times chattel and real estate security. During the same period the defendants also borrowed money from the Regan State Bank at Regan, North Dakota, and kept a checking account at the latter institution. One, Paul C. Remington, was president of the City National Bank, Bismarck, and also of the Regan State Bank, but the two institutions were not affiliated in any way and were separate and distinct concerns.

On September 13, 1916, the defendants executed and delivered to Paul C. Remington a real-estate mortgage upon their homestead in the sum of $1,000, securing a promissory note of like amount payable on the 1st day of November, 1919, with interest from date until maturity at the rate of six per cent. per annum, and after maturity at the rate of ten per cent. per annum. This mortgage was filed for record in the office of the register of deeds, Burleigh county, North Dakota, on the 11th day of November, 1916; and on January 16, 1917, Paul C. Remington assigned this mortgage by an instrument in writing to the City National Bank of Bismarck, North Dakota, which assignment was later, on July 1, 1924, filed for record in the office of the register of deeds of Burleigh county, North Dakota.

This real estate mortgage was not paid at maturity and on March 8, 1920, the defendants being further indebted to the City National Bank for moneys borrowed in addition to the real estate mortgage in the sum of $2,050, the indebtedness of $1,000 on the real estate mortgage was added to the chattel indebtedness of $2,050 and was placed in a note for $3,050, which was secured by a chattel mortgage signed by both of the defendants covering all their horses, cattle and machinery, the note and mortgage being payable October 1, 1920. The real estate mortgage and the $1,000 note accompanying the same were retained by the bank, with the result that the bank held both real estate and chattel security for the $1,000 indebtedness.

The defendants renewed the $3,050 note on January 3, 1921, into a note for $3,700, giving a new chattel mortgage on all their cattle, horses and machinery to secure the same. This note was payable July 1, 1921, and included the $1,000 due upon the real estate mortgage. This latter note was again renewed on November 23, 1921, into a note for $4,000, and again renewed on May 23, 1922, into a new note for $4,000, and again renewed on April 16, 1923, into a note for $3,606.55;

and again renewed on January 28, 1924, into a note for $3,685.07. All of these renewal notes carried the chattel security and included the $1,000 due on the real estate mortgage, the real estate mortgage and the $1,000 note being retained intact and all of the other notes and chattel mortgages being held as collateral security. This latter note dated January 28, 1924, was the last note given by the defendants to the City National Bank.

An examination of the evidence shows that the only payments made by the defendants to the City National Bank as shown by the books of the bank after the note of March 8, 1920, was given, are as follows: January 3, 1921, $53.32; November 23, 1921, $32.22; July 20, 1922, $1,470.00. Out of this latter sum three notes to the Regan State Bank were paid and one note to the City National Bank of over $200 and interest. The balance of $705.25 was applied on the $4,000 note dated May 23, 1922, leaving at that time unpaid $3,294.75. On August 25, 1923, defendants paid $100.00, and on September 1, 1923, $100.00.

About August 9, 1926, there was apparently a sale of the chattel security, which netted to apply upon the principal $556.85, which was indorsed upon the note for $3,685.07 dated January 28, 1924, so that there remained unpaid on the principal on that date $3,128.22.

Thereafter the City National Bank of Bismarck became insolvent, the bank was closed and one J. M. Riley was appointed Federal Receiver. The Regan State Bank also became insolvent and was closed and went into the hands of a receiver. The exact date of the closing of these two institutions or the appointment of the receivers is not shown by the testimony.

After the closing of the City National Bank of Bismarck and the appointment of a receiver, the Depositors Holding Company, a corporation, the plaintiff herein, was organized for the purpose of taking over the assets of the defunct corporation and attempting their liquidation for the benefit of the depositors and creditors.

On May 9, 1927, J. M. Riley, as receiver of the City National Bank of Bismarck, assigned to the plaintiff corporation the $1,000 mortgage given by the defendants September 13, 1916, to the City National Bank of Bismarck, and on February 11, 1930, this assignment was duly re-

corded in the office of the register of deeds of Burleigh county, North Dakota.

On March 22, 1930, the Depositors Holding Company foreclosed the real estate mortgage by advertisement, a sale of the property was had and the property was bid in by the plaintiff for the sum of $2,505.39, and on that date a sheriff's certificate of sale was issued and delivered to the plaintiff. This amount of $2,505.39 was arrived at by separating from the blanket note given by the defendants to the City National Bank, January 28, 1924, for $3,685.07, the amount due upon the real estate mortgage for principal, interest, taxes and insurance. The total amount due at that time upon the blanket note covering both real and chattel loans was $4,261.86, which included interest. After giving the defendants credit upon said note for the sum of $2,505.39, the amount realized upon the real estate mortgage foreclosure sale, there remained an indebtedness of $1,756.47, no part of which has ever been paid by the defendants and which to all appearances will be a total loss to the plaintiff.

After the expiration of one year from the date of the foreclosure sale a sheriff's deed to the property was issued by the sheriff of Burleigh county, North Dakota, to the plaintiff, and no attempt to redeem or any offer of redemption has ever been made or tendered by the defendants.

The present action to quiet title was commenced by the plaintiff in April, 1932. The answer of the defendants alleges payment of the mortgage in full prior to the date of foreclosure and alleges that the sale of the property by advertisement and the issuance of the sheriff's certificate and the sheriff's deed were fraudulent upon the ground that there was nothing due from the defendants to the plaintiff upon said mortgage or note at the time the foreclosure proceedings were held.

The specific claim of the defendants in the lower court and urged upon this appeal is that sometime about 1918 or 1919, no exact date being given, the defendant W. H. Brown had a conversation with Paul C. Remington, the president, and John Graham, the vice-president, of the City National Bank of Bismarck, and that in that conversation these gentlemen told him that he could at any time make any payments

which he desired upon his notes at the Regan State Bank and could make settlement for such payments at the Regan State Bank.

The defendants claim that following this conversation they made certain payments to one Arnold Geberding, the cashier of the Regan State Bank, as follows: In October, 1919, a check for $400.00; about the latter part of November or the first part of December, 1920, the proceeds from a shipment of livestock, netting $715.00; about July 14, 1922, from the sale of cattle, $375.00; and about July 19, 1922, $1,220.00 which he received from a Hail Insurance Company for hail loss.

The testimony of W. H. Brown, the defendant, as to each one of these payments was that he instructed Arnold Geberding to forward them to the City National Bank of Bismarck to be applied as payments upon the real estate mortgage of $1,000.00 given September 13, 1916.

And the further claim of the defendants is that the Regan State Bank and Arnold Geberding, its cashier, were agents for the City National Bank, that the instructions given to the agent were binding upon the principal and that the defendants now are entitled to have said payments applied to the liquidation of the real estate mortgage and if so applied they would pay the real estate mortgage in full, and that any amount over and above the sum necessary to pay the real estate mortgage should be credited upon the defendants' other indebtedness to the bank.

The general rule is that the burden of proving payment is upon the party who alleges it; that payment is an affirmative defense and must be established by a fair preponderance of the evidence. See 48 C. J. p. 680, § 176; Satterlund v. Beal, 12 N. D. 122, 95 N. W. 518; Lokken v. Miller, 9 N. D. 512, 84 N. W. 368; Star Wagon Co. v. Matthiesen, 3 Dak. 233, 14 N. W. 107.

The lower court found that the defendants had failed to establish the defense of payment by a fair preponderance of the evidence; that all payments made by the defendants were properly applied by the City National Bank of Bismarck; that they were not entitled to credit for any further payments upon the real estate mortgage, and decreed that the defendants had no estate or interest in, or lien or encumbrance upon, the real property involved, and quieted title in the plaintiff.

We have reviewed the entire record. Upon such review we are satis-

fied that the findings and conclusions of the trial court should be sustained.

Although in an equity case, where a trial de novo is demanded, this court is not bound by the findings of the trial court, nevertheless the trial court in this equitable action possessed a superior opportunity, that of seeing and hearing the witnesses, observing their demeanor, weighing their testimony and testing their credibility, and therefore we feel that the judgment of the trial court upon the facts should have appreciable weight in this court. Security State Bank v. Wernick, 51 N. D. 219, 199 N. W. 948; Merchants Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488; Drivdahl v. International Harvester Co. 43 N. D. 284, 174 N. W. 817; Coykendall v. Briggs, 60 N. D. 267, 234 N. W. 74; First Nat. Bank v. Weiss, 54 N. D. 883, 211 N. W. 979; Ellingwood v. Schnellberg, 121 Neb. 207, 236 N. W. 451; Albaugh v. Shrope, 197 Iowa 844, 196 N. W. 743; Grand Rapids Trust Co. v. Bellows, 224 Mich. 504, 195 N. W. 66.

But this court is satisfied, independent of the findings of the trial court, that the defendants have failed to establish the defense of payment. It is true that the witness W. H. Brown testified as to these payments and that he was not contradicted by the direct testimony of any witness, because the only witness who could have contradicted him was Arnold Geberding and he was not within the jurisdiction of the court or present as a witness. But the physical facts are strongly opposed to the contention of the defendants and their actions speak louder than words. For instance, the total payments alleged to have been made by the defendants as shown above amount to $2,710. These were all made prior to the 20th day of July, 1922, and in themselves would be more than sufficient to pay the real estate mortgage in full. And yet on the 16th day of March, 1923, we find the defendants executing and delivering to the City National Bank of Bismarck their note for $3,606.55 with a chattel mortgage securing same, which note included the $1,000 real estate mortgage debt. That was the time for the defendants to speak and make claim that the real estate mortgage was paid. Again on January 28, 1924, the defendants executed and delivered to the City National Bank their note for $3,685.07 with a new chattel mortgage securing the same, and this note also included the $1,000 real estate debt, and yet the defendants were silent. There is

nothing in the record to show that they ever made any claim to anyone connected with the City National Bank, or the receiver, or the Depositors Holding Company, or the Regan State Bank, that the real estate mortgage was paid in full; or that they ever asked for the $1,000 real estate note or a satisfaction of the real estate mortgage until after the sheriff's deed had issued in the year 1931, or this action to quiet title was commenced in 1932.

We must remember that this land was their homestead and, so far as the record discloses, was all the land they had. They naturally would be keen to protect their homestead right and save it from foreclosure, and yet for a period of nine or ten years they make no complaint to the City National Bank as to the method in which the payments were applied.

And we must remember, too, that in the meantime, in August, 1926, the chattel security had been foreclosed and sold to apply upon this blanket note. Certainly at the times that these new notes and chattel mortgages were given by the defendants the amount of their payments, and the manner in which they had been applied, must have been discussed. At least, the information was there and available and would undoubtedly have been given to them by the officers of the City National Bank. This claim that the payments should have been applied upon the real estate mortgage was perhaps an afterthought, when the defendants found that they were in danger of losing all of their property.

The payments having been made by the defendants to the City National Bank without any direction as to how they were to be applied, the bank had a right to apply them as it thought best.

This is governed by statute, § 5799, Laws of 1913, which reads as follows:

"Performance, How Applied When There Are Several Obligations. When a debtor under several obligations to another does an act by way of performance in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as follows:

"1. If at the time of the performance the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be so applied.

"2. If no such application is then made the creditor within a reasonable time after such performance may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; . . ."

The general rule is that if the debtor makes no specific appropriation, the creditor may apply the payment to any one of the two or more debts owed him by such debtor. The creditor may apply the payment to an unsecured rather than a secured claim, or to any one of two or more secured claims, or to the most precarious of his secured claims, or he may apportion the payments among the secured notes in his own interest and for his own protection. 48 C. J. p. 647, § 94.

The bank at all times held the $1,000 real estate mortgage and the note accompanying it as an independent debt. The taking of the new note on March 8, 1920, for $3,050, which included the $1,000 due on the real estate mortgage, was not taken in payment of the real estate debt, it was merely additional security. The bank in effect was holding a chattel mortgage and a real estate mortgage for the same obligation, though the amount of the chattel indebtedness included in the note was much larger than the amount of the real estate debt.

The payments made by the defendants were never sufficient to pay the chattel loan. The bank would naturally feel that the chattel security perhaps was the more precarious, and thus under the law would have a right to apply the payments made by the defendants without any direction as to their application, to the indebtedness secured by chattel mortgages. All of the actions of the bank and the methods of bookkeeping show that this was the course the bank pursued.

The conclusions reached by the trial court are, in our opinion, justified by the record, and it follows that the judgment appealed from must be affirmed. It is so ordered.

NUESSLE and CHRISTIANSON, JJ., and HOLT, Dist. J., concur.

BIRDZELL, Ch. J., and BURKE, J., disqualified, did not participate, Hon. Daniel B. HOLT, Judge of the First Judicial District, and Hon. Geo. M. McKENNA, Judge of the Third Judicial District, sitting in their stead.

BURR, Ch. J. (dissenting). After mature reflection I am satisfied the evidence shows clearly instructions from the City National Bank to make payments through the Regan State Bank. The testimony of the defendant shows this and there is no contradiction.

There is testimony to the effect that payments were made to the Regan State Bank with directions to have them applied upon the real estate loan. It must be remembered that if the payments were not applied upon the real estate loan they were applied upon the chattel loans and the amount of indebtedness due would remain the same. Hence the debtor would readily sign notes for his indebtedness, without considering to any special extent the different items which were said to make up the balance due. This is not so unusual nor so improbable as to be unworthy of credence, particularly in view of the fact that the plaintiff did not produce as a witness the then cashier of the Regan State Bank who was in position to deny the statements of the defendant if they were not true.

I feel I cannot agree with the facts as found, and therefore disagree with the conclusions drawn.