Verner HANSEN, d/b/a Hansen Implement Company, Plaintiff and Respondent,

v.

Nick FETTIG, Defendant and Appellant.

Civ. No. 8641.

Supreme Court of North Dakota.

Sept. 21, 1970.

Greenwood, Swanson, Murtha & Moench, Dickinson, for defendant and appellant.

Marshall T. Bergerud, Killdeer, for plaintiff and respondent.

ERICKSTAD, Judge.

The defendant Nick Fettig appeals from a judgment of the district court of Dunn County entered on the 7th of January, 1970, obtained by the plaintiff Verner Hansen in the sum of $1091.65, plus interest, costs and disbursements.

The judgment arises out of a suit brought by Mr. Hansen to recover the balance due on account for goods sold and services rendered to Mr. Fettig between January 1958 and May 28, 1965. Mr. Fettig's answer generally denied every allegation of the complaint and further asserts that the claim is barred by the statute of limitations.

Mr. Hansen offered as evidence during the trial, before the court sitting without a jury, sales slips alleged to be the carbon copies of the sales slips made at the time of sales to Mr. Fettig covering a period extending from January 1958 through May 28, 1965. Among these sales slips was one dated August 24, 1961, for a used Minneapolis-Moline combine, which, with tax, amounted to $1734. The sales slip was marked as a charge and carries Mr. Fettig's signature. These slips were received in evidence under our Uniform Business Records as Evidence Act.

Mr. Fettig admits signing the sales slip for the combine and does not deny any of the charges asserted by any of the sales slips. It is his contention, however, that because he subsequently on the same date executed a retail installment contract for the combine in the sum of $1734, which contract provided for specific payments during 1961 and 1962, the contract did not become a part of the open account. It is further his position that he made no payments on the contract and that accordingly when action was brought on the open account, by complaint served August 19, 1968, the same being more than six years after August 24, 1961, the date of the purchase of the combine, the said action was outlawed by the six-year statute of limitations. See Section 28–01–16, Subsection 1, N.D. C.C.

Mr. Hansen testified that in periodic billings sent Mr. Fettig he included the purchase price of the combine in determining the balance due and owing him by Mr. Fettig and that Mr. Fettig made no objection to the amounts of any of the bills sent him.

The trial court found that Mr. Fettig must have made payments on the combine within six years of the commencement of this action, because between November 1, 1962, and May 28, 1965, he made total payments of $2543.76 to Mr. Hansen, which exceeded his open account of $1901.71, if the combine debt is excluded, by $642.05.

Mr. Fettig, however, argues that since three of those checks, one dated February 3, 1965, for $107.52, one dated May 28, 1965, for $743.37, and one dated August 19, 1964, for $1392.87, had notations written on the face of them indicating that they were to be applied for truck repair and general repair, they could not be applied towards the payment of the combine. He testified in the trial court that these notations were placed upon the checks by representatives of the Farmers Home Administration, from which he acquired the funds to pay the checks. He concedes that he made no objection, however, to the manner in which these payments were credited at the time of payment. The credit slips received in evidence show that they were marked "on acc't." or "credit acc't." Mr. Hansen denies seeing any notations on the face of the checks as of the time that he received them. He testified that it was his practice to apply all checks to the oldest accounts and that he did this with these three checks as well as the check for $300 received on November 11, 1962, upon which there is no notation. None of the employees of the Farmers Home Administration were called to verify or deny the directions for specific payment.

Mr. Hansen's bookkeeping system was such that whenever a payment was made on an account he made a credit slip similar to the slip that was made for each purchase and the purchase and credit slips were posted to a daily work sheet. The daily work sheets were periodically posted to individual accounts. The ledger of Mr. Fettig's account was received in evidence, showing the purchase of the combine as a debit. No credit was given for the execution of the retail installment contract. Incidentally, the seller's copy of the contract was never filed with the register of deeds. The purchaser's copy of this contract was so filed only in 1970.

■ A number of specifications of error have been asserted, but we shall consider herein only those supported by written argument in the brief filed with us. This is consistent with past practice. See Regent Cooperative Equity Exchange v. Johnston's Fuel Liners, Inc., 122 N.W.2d 151 (N.D. 1963), Syllabus ¶ 4, wherein we said: "A specification of error is deemed abandoned unless supported by written argument in the brief filed in the Supreme Court."

Let us first consider what type of an account we have. in this case. In that connection, Mr. Fettig refers us to Section 28–01–37, N.D.C.C., which reads:

> *When cause of action upon open account accrues.*—In an action brought to recover a balance due upon a mutual open, and current account, when there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side.

■ The account in the instant case may be an open account, but it is not, strictly speaking, a mutual account.

■ Pertinent thereto is the following from an A.L.R. annotation published in 1925:

> Effect of credit items to give account a mutual character; majority view.

> The rule stated in the annotation in 1 A.L.R. 1068, as supported by the weight of authority, that an account consisting of charges on one side and payments on the other is not a mutual account, is adhered to in the following cases: Carter v. Canty (1919) 181 Cal. 749, 186 P. 346; Furlow Pressed Brick Co. v. Balboa Land & Water Co. (1921) 186 Cal. 754, 200 P. 625; Shuler v. Corl (1918) 39 Cal.App. 195, 178 P. 535; Brazell v. Hearn (1925)

[33] Ga.App. [490], 127 S.E. 479; Crump v. Sefton (1918) 172 N.Y.S. 338; Sanger & Jordan v. Duncan (1921) 196 App.Div. 55, 187 N.Y.S. 604; Hollingsworth v. Allen (1918) 176 N.C. 629, 97 S.W. [S.E.] 625; Sharp v. Miller (1923) 94 Okl. 217, 221 P. 747; Dillard v. Dugger Grocery Co. (1921) Tex.Civ.App., 232 S.W. 360.

Thus, an ordinary store account, consisting of charges on one side and payments on the other, is not a mutual account. Hollingsworth v. Allen (1918) 176 N.C. 629, 97 S.W. [S.E.] 625. 39 A.L.R. 372 (1925).

The annotation concedes that there is a minority view contrary to the view prevailing in most other jurisdictions that payments of money on account are sufficient to render the account mutual. In support of the minority view is Fuerbringer v. Herman, 225 Mich. 76, 195 N.W. 693 (1923), 39 A.L.R. 372.

Earlier in the annotation we note the following:

In Missouri, it has been held, that when it is fairly inferable from the conduct of the parties while an account is accruing, and all the charges are on one side, that the whole may be considered as one account, then none of the items are barred unless all are. Gammon v. McDowell (1921) 208 Mo.App. 616, 235 S.W. 461; Poague v. Mallory (1921) 208 Mo.App. 395, 235 S.W. 491; Smith v. Collins (1923) Mo.App., 247 S.W. 457; Loveland v. Collins (1923) Mo., 254 S.W. 22; Craighead v. Roberts (1924) Mo.App., 263 S.W. 536. But this statement is properly to be taken only as meaning that where all the items of a unilateral account constitute a single demand, the Statute of Limitations begins to run from the date of the last item. So understood, it is not at variance with the generally recognized rule that an account all the items of which are on one side is not a mutual account. 39 A.L.R. 371, 372 (1925).

In a later A.L.R. annotation it is said:

The rule stated in the annotation in 1 A.L.R. 1068, and restated in 39 A.L.R. 372, that an account consisting of charges on one side and payments on the other is not a mutual account, is adhered to in Brock v. Franck (1927) 194 N.C. 346, 139 S.E. 696, where an ordinary store account was held not to be a mutual account within a statute stating a limitation period. 57 A.L.R. 203 (1928).

■ Considering the language of Section 28–01–37, N.D.C.C., it would appear to us that our legislature contemplated a result such as the majority view would produce. Accordingly, such section has no application to the instant case.

We must next decide the effect or applicability of Section 28–01–36, N.D.C.C. It reads:

*New promise must be in writing in order to extend limitation—Effect of any payment.*—No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest.

■ This statute necessitates a consideration of legal principles involved in an account stated, which we understand to be an account agreed upon. Pertinent thereto is what is said in a 1957 annotation contained in A.L.R.2d as follows:

It is clear that there has been declared, recognized, and, in some cases, given application, a general legal principle which can be stated tentatively in the form: limitations against an action to enforce an account stated begin to run at the time the statement is made. The precise scope, meaning, and operation of this "rule" in the determination of individual cases is, however, a matter of some dif-

ficulty. Frequently, the rule is given lip service in cases where no occasion arises for its actual application. The meaning of the words "the time the statement is made" is by no means free from ambiguity. Neither is it always clear whether a particular action was brought to enforce an "account stated" or an "open account." 51 A.L.R.2d 344 (1957).

In discussing the said rule the writer of the annotation comments:

Assume a typical open account situation, for example, that existing where a merchant supplies goods to a customer from time to time over a period of years at the customer's order, the customer occasionally making payments to the merchant. In this situation limitations normally begin to run from the date of the last item of the account, and an action to enforce the account will not be barred until the statutory period has elapsed after such date. Assume now that some transaction takes place between the parties during the continuance of this series of separate furnishings of goods and separate payments made, which can fairly be described as an account stated, and that after the parties have ceased to do business with each other, the merchant, alleging a balance due him, brings an action to recover it.

If in a particular case involving the situation outlined the defendant pleads the statute of limitations the court may approach the problem from (1) the standpoint of when limitations "begin to run" or (2) the standpoint of the status of the statement of the account as an acknowledgment or new promise which will "take the case out of the operation of the statute." It may say that where the parties to an open account have, between the times of the accrual of the first and last items in such account, stated the account, limitations with respect to the situation must be regarded as beginning to run at the

time of such statement. If this view is taken, the normal conclusions would be that an action specifically on the account stated would not be barred if brought within the statutory period after the statement, no matter when the various items antedating the statement may have accrued, * * * 51 A.L.R.2d 347 (1957).

After further discussion, the writer makes this observation:

The discussion so far has proceeded on the assumption that an oral acknowledgment or new promise is sufficient to exclude the statute of limitations. But as a matter of fact there are in many jurisdictions statutes which require such an acknowledgment or promise to be in writing. If such a statute is applicable to actions to enforce an account stated, it would seem logically incorrect to say, broadly, that limitations begin to run against an account stated from the time the statement is made. If the statement is in writing, then, in a sense, limitations may begin to run from the time of the statement, but if the statement is oral it would seem that the statute makes it a nullity, at least so far as limitations are concerned. 51 A.L.R.2d 347, 348 (1957).

Section 11 of the same annotation discusses Lord Tenterden's Act, which is equivalent to a part of our Section 28–01–36. We quote:

An English statute of 1829, commonly known as Lord Tenterden's Act, providing, in effect, that no new promise should be sufficient to take a case out of the operation of the statute of limitations unless in writing, signed by the party to be charged, was the model or basis of statutes appearing in most American jurisdictions. While some of these statutes closely parallel the original English enactment, others exhibit some variety of terminology; all of them, however, require a writing with respect to acknowledgments or new promises re-

lied upon to defeat the statute of limitations. * * *

The bearing of statutes of this kind on the effect of the limitation doctrine on accounts stated is a matter of considerable confusion.

There are some cases which, assuming the general applicability of statutes based on Lord Tenterden's Act to actions involving a stated account, make the effect of such a statute depend upon whether or not the original items of the account accrued beyond the applicable period of limitation before the account was stated. If they did so accrue and if the statement of the account was oral, then recovery on the account stated is barred; if, on the other hand, the account was stated, orally, before limitations had run on any of the items of the account, an action to enforce the account stated may be maintained. 51 A.L.R.2d 365 (1957).

■ In our case it is apparent that we have no written acknowledgment of the balance due on the account and although Mr. Fettig may not have communicated either orally or in writing an objection to the bills that were sent him, we cannot say that there was an oral agreement between the parties that the balance due and owing as stated in the billings was correct. Accordingly, we find no oral agreement either. We must, therefore, hold that there is no basis in this case for the plaintiff to recover on the theory of an account stated.

It is Mr. Hansen's contention, however, notwithstanding the law as it relates to mutual accounts and stated accounts, that in this case he must prevail.

He refers us to Section 9–12–07, N.D. C.C., which reads:

*Performance when there are several obligations—Application.*—When a debtor under several obligations to another does an act by way of performance, in whole or in part, which is applicable equally to two or more of such obligations, such performance must be applied as follows:

1. If, at the time of the performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation is manifested to the creditor, it must be applied in such manner;

2. If no such application is then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation the performance of which was due to him from the debtor at the time of such performance, except that if similar obligations were due to him both individually and as a trustee, unless otherwise directed by the debtor, he must apply the performance to the extinction of all such obligations in equal proportion. An application once made by the creditor cannot be rescinded without the consent of the debtor;

3. If neither party makes such application within the time prescribed herein, the performance must be applied to the extinction of obligations in the following order, and if there is more than one obligation of a particular class, to the extinction of all in that class ratably:

a. Of interest due at the time of the performance;

b. Of principal due at the time of performance;

c. Of the obligation earliest in date of maturity;

d. Of an obligation not secured by a lien or collateral undertaking;

e. Of an obligation secured by a lien or collateral undertaking.

■ He states that this court construed that statute in Depositors' Holding Co. v. Brown, 64 N.D. 222, 251 N.W. 295, 298 (1933), when this court quoted with ap-

proval the general rule as stated by Corpus Juris, as follows:

> The general rule is that, if the debtor makes no specific appropriation, the creditor may apply the payment to any one of the two or more debts owed him by such debtor. The creditor may apply the payment to an unsecured, rather than a secured, claim, or to any one of two or more secured claims, or to the most precarious of his secured claims, or he may apportion the payments among the secured notes in his own interest and for his own protection. 48 C.J. p. 647, § 94. Depositors' Holding Co. v. Brown, 64 N.D. 222, 251 N.W. 295, 298 (1933).

It is Mr. Hansen's contention that the debtor, Mr. Fettig, did not indicate to him or communicate to him how the checks should be applied and that he accordingly applied the checks as was his usual custom to the oldest account first and that in so doing the purchase price of the combine was paid in full.

Mr. Fettig, on the other hand, contends that there was a direction indicated, as disclosed by the notation on the face of three checks, showing that those checks totalling $2243.76 were to be applied only toward those items indicated on the checks, and that there is no indication on those checks or on any other check that they should be applied on the payment of the retail installment contract.

It is Mr. Fettig's further contention that the purchase of the Minneapolis-Moline having been set up on a retail installment contract could not under any circumstances be included in an open book account.

In support of that position he especially refers us to Goodsole v. Jeffery, 202 Mich. 201, 168 N.W. 461, 462 (1918).

> I know of no decision of this court, and think there is none to be found in any jurisdiction, holding that, where the dealings of the parties relate entirely to and are governed by a special contract for the payment of money, at agreed up-on periods, an open mutual account is established by performance of the contract obligation, whether a book account of it is kept or not. The trial court was in error, and, the defendant having pleaded the statute of limitations, judgment should have been directed in his favor for any part of plaintiff's demand which did not accrue six years before the action was begun.

That case may be distinguished from the instant case in that in the instant case the dealings do not relate entirely to a special contract, but relate to a series of purchases and a special contract for which a sales slip was made out and acknowledged by the purchaser. In any case, under Section 9–12–07, N.D.C.C., a creditor may apply undirected payments to a contract that is not a part of an open account.

Mr. Fettig also refers us to other encyclopedic law as follows:

> * * * Agreement, either express or implied, is of the very essence of such a mutual account current because it is the act of the parties, and not the act of the law. Thus the existence of such an account does not necessarily follow as a consequence of the fact that each party has an open account current against the other, and such fact is of itself no ground for even a prima facie presumption of a mutual course of dealing; the two accounts will remain separate and independent unless there is evidence tending to show an express or implied agreement that they shall be converted into one entire and indivisible mutual account. * * *

> * * * * * *
> * * * Items, however, which might not of themselves properly constitute part of a mutual account may become incorporated therein if there is an express or implied understanding of the parties that such items should constitute a part of their mutual dealings and enter into the account so as to become the subject of future adjustment in ascertaining

the balance due; * * *. 54 C.J.S. Limitations of Actions § 165 at 116.

We assume from the reference to this authority that Mr. Fettig believes a mutual account to be in existence at least in part in this case, a fact which we have earlier found not to be so, but in any case it is our view that the latter part of that reference is more in favor of Mr. Hansen than Mr. Fettig.

Other references were made by Mr. Fettig to other encyclopedic law and other case law. These we have studied and found of little aid to us in determining this case.

It would seem to us that we are left with the problem of deciding whether Mr. Hansen was acting within his rights when he applied the checks that were made during the six years prior to the initiation of the action toward the oldest accounts. If he was right in doing so, then we believe that the trial court was correct in ordering judgment for Mr. Hansen, as the balance of the purchases of goods and services then would have been within six years of the initiation of the instant lawsuit.

As the facts relative to the issue of a direction of payment by the debtor are in conflict, it is very difficult for us as an appellate court to ascertain wherein the truth lies. Whether the notations were on the checks at the time they were submitted to Mr. Hansen or not, we do not know. Under such circumstances we give the trial court's findings appreciable weight. The trial court has, however, made no finding on this issue.

But for the sake of argument, assuming that the notations were on the checks at the time they were submitted to Mr. Hansen, we are of the opinion that the notations are an insufficient direction.

In support of this view, Mr. Hansen draws our attention to the following:

A direction by the debtor to apply a voluntary payment to a particular item or debt must be communicated to the creditor; the mere intent of the debtor, not communicated to the creditor, or attended by any act or declaration manifesting it to him, is insufficient. If the direction is given in words, the words must be communicated to the creditor, and, if circumstances are relied on as indicating the appropriation, knowledge of these circumstances must be traced to the creditor. 70 C.J.S. Payment § 54.

As Mr. Fettig conceded during the trial that none of the notations which he now asserts to be directions were placed on the checks by him, we think another rule of law is pertinent.

As a general rule, the exercise of the right of appropriation of payments belongs exclusively to the debtor and creditor and no third person may control or compel an appropriation different from that agreed on or made by them, * * *.

70 C.J.S. Payment § 76 (1951).

No rebuttal has been submitted by Mr. Fettig to this asserted law. We believe it to be proper and accordingly apply it in this case. Applying the checks to the oldest purchases of goods and services leaves the more recent purchases within the statute of limitations. The judgment of the trial court is affirmed.

TEIGEN, C. J., and STRUTZ, PAULSON and KNUDSON, JJ., concur.