STATE of North Dakota, for the Use and Benefit of the STATE HOSPITAL, Jamestown, North Dakota, Plaintiff and Appellant,

v.

Sam HINTZ and Elva Hintz, husband and wife, Defendants and Appellees.

Civ. No. 9596.

Supreme Court of North Dakota.

July 11, 1979.

Georgia M. Pope, Sp. Asst. Atty. Gen., Jamestown, for plaintiff and appellant.

Freed, Dynes, Malloy & Reichert, Dickinson, for defendants and appellees; argued by George T. Dynes, Dickinson.

PEDERSON, Justice.

This case involves an attempt by the State Hospital at Jamestown to collect on an account from Sam Hintz and Elva Hintz certain sums allegedly owed to the hospital for the care of their son, Sam Hintz, Jr., now deceased. Pursuant to Rule 56, NDRCivP, the district court granted summary judgment in favor of Sam Hintz and Elva Hintz. Hereinafter, we will refer to the appellant as the State Hospital and the appellees as the Hintzes. The summary judgment is affirmed.

Throughout most of his life, Sam Hintz, Jr., was institutionalized at the State School at Grafton and at the State Hospital in Jamestown. In 1963, he was transferred from the State School to the State Hospital and remained there until his death on July 4, 1972.

In 1958, during the time their son was at the State School, the Hintzes made arrangements with state administrators concerning payment toward their son's expenses. It appears that it was agreed that the Hintzes would contribute the sum of $1.00 per day toward costs incurred for their son's care. The record does not disclose whether or not this payment arrangement was made pursuant to § 25–09–05, NDCC. From 1963 through 1971, including the period in which Sam Hintz, Jr., was a patient at the State Hospital, the Hintzes paid $1.00 per day to the State on either a quarterly or an annual basis. It is undisputed that $3,871.00 was paid by the Hintzes to the State Hospital for their son's care.

On January 13, 1977, the State Hospital commenced this suit against the Hintzes for the outstanding balance of the costs incurred by the State Hospital. The State Hospital alleged that the Hintzes were, as responsible relatives under § 25–09–04, NDCC, indebted in the sum of $35,209.91 for expenses incurred in the treatment and care of Sam Hintz, Jr. In response, the Hintzes sought a dismissal on the grounds that: (1) they had complied with a payment agreement entered into with representatives of the State Hospital and were dis-charged of any obligation to make further payment; (2) the statute of limitations barred recovery by the State Hospital; and (3) § 25–09–04, NDCC, prevented the State Hospital from recovering any indebtedness incurred after July 1, 1971. The Hintzes then moved for summary judgment.

In its order granting summary judgment, the district court held that: (1) there was no genuine issue of material facts; (2) the Hintzes were not, pursuant to § 25–09–04, NDCC, responsible for any indebtedness on their account incurred after July 1, 1971; (3) the six-year statute of limitations contained in § 28–01–16, NDCC, operated as a bar to the claim; and (4) the Hintzes agreed to and did pay $1.00 per day for the care of their son, and that this payment operated as an accord and satisfaction.

The parties agreed that § 25–09–09, NDCC, does not apply to this action. Section 25–09–09 reads in part:

"No statute of limitations or similar statute or the doctrine of laches shall bar the right of recovery for the expenses incurred by the state for care and treatment at the state hospital or state school *from the patient or his estate,* . . . ." [Emphasis added.]

Here, the action has been commenced against the Hintzes as responsible relatives under § 25–09–04, NDCC, rather than against the estate of Sam Hintz, Jr.

The State Hospital asserts that it was error for the trial court to hold that the six-year statute of limitations (§ 28–01–16, NDCC) bars any recovery for the balance of the account indebtedness. Section 28–01–16, NDCC, provides in part:

"The following actions must be commenced within six years after the cause of action has accrued:

1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104."

In order to apply the limitation in the above section it is first necessary to classify the account involved in this action. In *Everson v. Partners Life Ins. Co.,* 268 N.W.2d 794,

796 (N.D.1978), our court defined a "mutual account" as:

" . . . an account wherein are set down by express or implied agreement by the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made thereto, until it shall suit the convenience of either party to settle and close the account; . . . "

A mutual account arises where there are items debited and credited on both sides of the account which indicate mutual transactions between the parties. See, generally, 1 Am.Jur.2d Accounts and Accounting, § 5, at 374–375. It has been said that, as a matter of law, an account is mutual when the evidence of the items thereof shows that, at various times, the respective parties were indebted to each other. *Hardin v. Stanton,* 14 Ga.App. 299, 80 S.E. 698 (1914). The statute of limitations begins to run on a mutual account at the time the last item is proved in the account on either side (§ 28–01–37, NDCC). An account involving only charges on the one side and payments on the other is not a mutual account but a simple open account. *Erenfeld v. Erenfeld,* 196 N.W.2d 406 (N.D.1972); *Hansen v. Fettig,* 179 N.W.2d 739 (N.D.1970). An "open account" is defined as one in which some item is not settled by the parties, or where there have been running or current dealings between the parties and the account is kept open with an expectation of further dealings. See *Griggs-Paxton Shoe Co. v. A. Friedheim & Bro.,* 133 S.C. 458, 131 S.E. 620, 624 (1926).

■ We conclude that the account involved in this action is a simple open account. The payment arrangement between the Hintzes and the State Hospital consisted of quarterly and annual credits ($1.00 per day), offset by periodic expenses incurred by the State Hospital for the care of Sam Hintz, Jr. The account record con-

sists of debits, which necessarily must be in the form of receivables, and credits showing the amount actually contributed by the Hintzes toward their indebtedness. An account cannot be considered an "account stated" where there is no written acknowledgment of the balance due. See *Hansen v. Fettig, supra,* 179 N.W.2d at 743–745.

■ Under the rule enunciated by our court in *Hansen v. Fettig, supra,* 179 N.W.2d at 744, the statute of limitations on a simple open account runs from the date of each item, rather than from the date of the last transaction. The collection of any remaining balance alleged to be outstanding must be initiated within six years after the date the expense for a particular service was incurred. See *Erenfeld v. Erenfeld, supra,* 196 N.W.2d at 409.

Having concluded that the payment arrangement between the State Hospital and the Hintzes constituted a simple open account, we move to the next issue which is whether the Hintzes acknowledged the entire indebtedness, the result of which would toll the statute. Section 28–01–36, NDCC, provides:

"No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest."

In *Erenfeld v. Erenfeld, supra,* 196 N.W.2d at 410, we said that "part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations."

It was not strenuously argued that the Hintzes had acknowledged an obligation to pay any amount in excess of the sums actually paid. It was not claimed that the Hintzes were actually billed, on either a quarterly or annual basis, for the total amount of indebtedness. We conclude that the Hintzes did not acknowledge the alleged balance so as to indicate an existing obligation to pay the remainder.

■ Because the statute of limitations runs on a simple open account from the date of each separate item, the only expenses for which the State Hospital has an action for collection are for those services rendered to Sam Hintz, Jr., within six years prior to commencement of this action.[1] The record discloses that a summons and complaint were served on the Hintzes on January 13, 1978. Any services performed by the State Hospital prior to January 13, 1972, would fall within the statute and be uncollectible. For expenses incurred from January 13, 1972, through July 4, 1972, the date of the death of Sam Hintz, Jr., the State Hospital would have an action for collection.

■ In its findings of fact, the district court noted that Sam Hintz, Jr., was more than 18 years of age as of July 1, 1971.[2] The records of the State Hospital concerning Sam Hintz, Jr., indicate that he was, as of July 1, 1971, 26 years old. The district court concluded that, under § 25–09–04, NDCC, any expenses incurred after July 1, 1971, were uncollectible by the State Hospital as a matter of law. Section 25–09–04, NDCC, as amended in 1971, provided:

"In the event of a patient's inability to pay for the costs of care and treatment, responsible relatives of such patient at the state hospital or state school shall pay to the supervising department monthly, the actual cost of care and treatment incurred by the state at each institution, or such lesser amount as may be determined by law. For purposes of this chapter and title 25 of this Code, 'responsible relatives' shall mean the patient's spouse, father, or mother. *In no event, however, shall responsible relatives be required to pay such costs for children upon [such children] reaching their twenty-first birthday."* [Emphasis added.]

Even though the Hintzes are responsible relatives under this section, as a matter of law the State Hospital is barred from collecting any expenses from them incurred after July 1, 1971, because Sam Hintz, Jr., had reached the age of majority.

We conclude that, under § 28–01–16, NDCC, the State Hospital is barred from collecting any alleged indebtedness on its account for services rendered prior to January 13, 1972. Although the State Hospital is not barred by this statute from bringing an action for expenses incurred from January 13, 1972, until July 4, 1972, these expenses are uncollectible under § 25–09–04, NDCC, because Sam Hintz, Jr., was over the age of majority on July 1, 1971.

We affirm the summary judgment granted by the district court.

ERICKSTAD, C. J., and PAULSON, J., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the affirmation of the summary judgment granted by the district court,

---

1. Section 28–01–16, NDCC, provides that an action upon an obligation, contract, or liability must be *commenced* within six years after the cause of action has accrued. An action is *commenced* by service of a summons and complaint. Section 28–01–38, NDCC; Rule 12, NDRCivP.

2. Prior to 1971, § 25–09–04, NDCC, required a responsible relative to contribute to the expenses incurred by the State for care and treatment of the patient regardless whether or not the patient had reached the age of majority. See § 1, Ch. 211, S.L.1961; § 3, Ch. 222, S.L. 1963; § 64, Ch. 203, S.L.1965; § 1, Ch. 216, S.L.1967. In 1971, the legislature amended § 25–09–04, NDCC, to provide that no responsible relative shall be required to pay such costs for children upon such children reaching their twenty-first birthday. By interpreting this sec-

tion to apply prospectively, pursuant to § 1–02–10, NDCC, the Hintzes would not be obligated to contribute any sums toward the care of Sam Hintz, Jr., after the effective date of the amendment because Sam Hintz, Jr., was, at that time, over 21 years of age (§ 6, Ch. 275, S.L.1971). Section 25–09–04, NDCC, was subsequently amended in 1973 and 1975. The 1973 amendment changed the patient's age after which a responsible relative's obligation for payment ceased, from 21 to 18 "in regard to indebtedness incurred from and after July 1, 1971." Section 1, Ch. 230, S.L.1973; § 5, Ch. 245, S.L.1975. The district court apparently relied upon the 1973 amendment reducing the patient's age of majority. This amendment remained unchanged in the 1975 version of the statute.

but I do so for reasons different from those recited in the majority opinion.

I agree that the account between the State Hospital and the Hintzes was an open account and not a mutual account. Realizing that a majority of the court in *Erenfeld v. Erenfeld,* 196 N.W.2d 406 (N.D.1972), held that part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations, I believe the dissent by Justice Teigen (Knudson concurring) to that opinion correctly states the law on that matter. As Justice Teigen pointed out, the majority in *Erenfeld* relied upon the previous decision in *Hansen v. Fettig,* 179 N.W.2d 739 (N.D.1970), for the proposition that part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations, and that *Hansen* does not so hold. A reading of *Hansen* confirms that conclusion in my mind. To me, any other conclusion would obviate portions of Sections 28–01–36 and 9–12–07, N.D.D.C.

I do, however, believe that the Hintzes made payments of one dollar per day on a current-year basis and that such payments had to be applied to the current year's obligation to the State Hospital. This is made clear by the method of payments, i. e., each payment covered a three-calendar-month period and was computed at exactly one dollar per day for each of the regular four calendar quarters through 1968. After that time, payments were made in the amount of $365 for each year. In addition the other documents, including interrogatories and affidavits, attached to the motion for summary judgment establish that the Hintzes were paying one dollar per day for the immediately preceding three-calendar-quarter period and through the payment made January 9, 1968, and for the immediately preceding calendar year after that period. Thus the Hintzes were not making payments which could be applied to the obligation of prior years to the State Hospital. Therefore, even though I believe the correct conclusion is that part payment on a simple open account without a written acknowledgment or promise does toll the stat-ute of limitations, I do not believe the statute was tolled in this instance because the payments made by the Hintzes were for only the current-year period. Any obligations which might have been due for previous years (and this is in dispute since the Hintzes have alleged an accord and satisfaction of one dollar per day for the hospital care of their son) would be barred by the statute of limitations because there was no subsequent part payment to toll the statute for those years.

SAND, J., concurs.