**TOWN & COUNTRY CO–OP,**
**Plaintiff and Appellee,**

v.

**Ernest LANG, Defendant and Appellant.**

**Civ. No. 9615.**

Supreme Court of North Dakota.

Dec. 12, 1979.

Rehearing Denied Jan. 10, 1980.

William R. Mills, Bismarck, for plaintiff and appellee.

Houdek & Wolberg, Bismarck, for defendant and appellant; argued by Keith Wolberg, Bismarck.

SAND, Justice.

Earnest Lang appealed from the 21 December 1978 judgment of the district court granted in favor of Town & County Co-op

[hereinafter Town & Country] in the amount of $3,250.19, together with interest on that sum of 12% per annum. The legal issue arose primarily out of a conflict between the parties as to the assessment of monthly finance charges on a consumer credit account held by Lang at Town & Country. Having reviewed the entire record of the case, but confining our decision to only those issues raised by the parties on appeal, we affirm the judgment of the trial court.

Ernest Lang transacted business with Town & Country some time prior to 25 September 1972, and from that time until 21 April 1976, made 221 separate purchases on his Town & Country credit account. Throughout this period, Town & Country had in effect a credit policy by which the closing date of its billing cycle was the 26th day of each month. If the amount for which credit was extended was not received by Town & Country before the following month's closing date, a finance charge of one percent per month was assessed on the past due balance. The past due balance was computed by deducting all current payments and credits from the previous balance. Lang was initially alerted to this credit policy at the time he established his credit arrangement with Town & Country, and was reminded of it on two subsequent occasions, 5 April 1973 and 31 October 1975, by credit policy disclosure notices sent by the cooperative to all of its credit patrons.[1]

1. These two disclosure notices mailed out by Town & Country were virtually identical in all pertinent respects. The text of the 31 October 1975 notice follows:
"Dear Patron:
*Disclosure Notice*
"The Federal Truth in Lending Act requires all businesses, including your cooperative, to disclose credit terms to customers in a uniform manner. The extension of credit costs your cooperative money. That is why we must impose a *FINANCE CHARGE* on past due balances.
"Your Board of Directors has adopted a credit policy which is applicable to those patrons for whom credit has been approved. It is effective *October 31,* 1975.
*CREDIT POLICY*
— The closing date of the billing cycle will be the 26th day of the month and accounts should be paid upon receipt of the statement.

— If the amount for which credit is extended is *not* received before the next closing date, a *FINANCE CHARGE* will be assessed on the past due balance. The past due balance is computed by deducting all current payments and credits from the previous balance. The *FINANCE CHARGE* will be computed by applying a Periodic Rate of 1% per month which is equivalent to an *ANNUAL PERCENTAGE RATE* of 12%.
— If the amount for which credit is extended is received before the next closing date, an additional *FINANCE CHARGE* will not be assessed.
— Your cooperative, pursuant to its Articles of Incorporation and Bylaws, has the security interest of a first lien on the capital stock or equities of the cooperative held by an patron for any debt due by that patron that is deemed otherwise uncollectible by the Board of Directors.

In addition, at the end of each monthly billing cycle Lang received a statement from Town & Country disclosing the month's charges, payments, and credits. These figures were calculated into the previous balance, yielding the past due balance upon which the one percent finance charge was then assessed. Each monthly billing statement also explained precisely how the past due balance was computed by Town & Country, and how and when the one percent finance charge was imposed.

The end result of the Town & Country credit policy was that the finance charge was added to the principal indebtedness at each billing cycle closing date, and thereafter bore interest as part of the past due balance. This assessment by Town & Country of a finance charge on a previously unpaid finance charge was characteristically a compounding of interest.

On numerous occasions during the course of their business dealings, Lang confronted Town & Country with what he termed "kind of a sore spot on the way they charge interest." The substance of each of these confrontations was Lang's assertion that the finance charge could not be assessed by Town & Country on a previously unpaid finance charge. On 21 April 1976, Lang's

Town & Country account was credited in the amount of $24.86 after Lang had resisted a compounded finance charge. It was not clear from the record how the exact amount credited was derived, but there was testimony that it may have been credited by Town & Country as "a settlement situation."

Lang made a minimal payment on his Town & Country account on 10 May 1976, but shortly thereafter the account was closed by the cooperative. At that time, the balance due to Town & Country was $5,484.00, which included all compounded finance charges up to that date.

On 24 May 1977, Town & Country brought suit against Lang for the amount of the outstanding debt, plus interest on the sum at the rate of 12% per year. Lang served his pro se answer to the claim upon the opposing attorney and asserted therein that Town & Country "violated the federal Truth-in-lending Act [hereinafter TILA] by not disclosing uniform [credit] terms" and that Town & Country "violated the terms it has disclosed." These assertions were actually a counterclaim by Lang, seeking relief under the civil liability provision of the TILA.[2]

NOTICE: See (accompanying statement) (reverse side) for important information regarding your right to dispute billing errors.
"This Disclosure Notice is being mailed or delivered to you so that your cooperative will be in compliance with the Truth in Lending Act. This will enable us to manage your cooperative more economically and efficiently for the benefit of all our patrons."

2. 15 U.S.C. § 1640 (1974), provides in pertinent part:
"*Civil liability—Individual or class action for damages; amount of award; factors determining amount of award*
"(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person as a result of the failure;
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under part E of this subchap-

ter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or
(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.
In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional."

Summary judgment was granted in favor of Town & Country on 1 November 1977, but this was subsequently vacated in part, leaving only that portion of the judgment equal to the actual cash value of the goods purchased by Lang remaining. The issue then to be decided was whether or not Town & Country had violated the TILA by compounding finance charges.

The district court concluded that Town & Country had fulfilled all the requirements of the TILA and granted judgment in favor of the cooperative. The relevant findings of fact were:

"2. That the plaintiff at the special instance and request of the defendant furnished goods, wares and merchandise at an agreed price and reasonable value including service charge and allowing all credits to said time in the sum of $5,484.00 as of May 10, 1976.

"3. That said extension of credit was *an open-end credit plan and there was no violation of the Truth in Lending Act.* [Emphasis ours.]

"4. That the service charge that was charged and agreed to be paid constitutes one percent a month.

"5. That the interest to February 10, 1978, was the sum of $1,141.64 and the total due on said date was $6,635.64. That there was paid on the 13th day of February, 1978, the sum of $181.00, leaving a balance due of $6,454.64.

3. There was an error of one dollar in the calculation of interest due up to 20 December 1978. The correct sum should have been $123.56, but because this was not raised by the parties we will not disturb the stated finding of fact and leave any change to be made by the parties.

4. The special notice of credit policy disclosure stated as follows:

"August 20, 1976
"SPECIAL NOTICE TO ALL PATRONS
"Dear Patron:
    "This notice is to remind you of the terms of our Credit Policy, and to notify you these terms will be strictly enforced.
    "In accordance with the Federal Truth-In-Lending Act, We are disclosing to you the following credit policy.
            CREDIT POLICY
    1. A statement of your credit purchases will be mailed to you at the end of each month.

"6. That the interest on said sum to August 5, 1978, was the sum of $387.24, leaving the total amount due on said date of $6,841.88.

"7. That there was paid on August 5, 1978, the sum of $3,752.12, leaving a balance due of $3,089.76. That the interest thereon up to December 20, 1978, was the sum of $122.56,[3] making a total due and unpaid of $3,212.32, which together with costs previously allowed by the Court in the sum of $37.87, makes total indebtedness of $3,250.19."

Judgment was entered in the amount of $3,250.19, together with interest thereon in the sum of 12% per annum, on 21 December 1978. Lang appealed the judgment to this Court.

A few preliminary comments are in order. On 20 August 1976, Town & Country instituted a new credit policy and sent special notice thereof to each of its customers.[4] Under the terms of the new policy, "convenience credit" was extended to customers for thirty days, with all balances due in full on the 10th day of the following month. If payment was not received by Town & Country by the end of the following month, a one percent finance charge was imposed on the outstanding balance. Beginning 1 October 1976, no further credit was to be extended to accounts which were then or would thereafter become past due.

2. Convenience credit will be extended to you for a period of *30* days. All payments are due in full by the *10*th of the following month.
3. Payments not received by the closing date of the following month will be charged a *1%* per month *Finance Charge* which is an annual percentage rate of *12%*.
4. Beginning October 1, 1976 we will *not* be able to extend further credit to accounts that are now past due, or that become past due.
    "We your board of directors have instructed our manager to strictly enforce the terms of our credit policy.
    "We find this necessary because the companys cash requirements does not permit us to extend credit beyond *30* days.
    "Your board believes that the above decision warrants your wholehearted support. We are most appreciative of your patronage and consider it a privilege to serve you."

The principal changes in Town & Country's credit policy on 20 August 1976 related to the billing cycle closing date and the payment due in full as a requirement for further credit.

Lang continually insisted, both in his brief and in oral argument, that the new Town & Country credit policy played the decisive role in the resolution of this case. What Lang failed to recognize, however, was that the changes in the Town & Country credit policy went into effect in late August 1976, while his credit transactions with Town & Country terminated on 10 May 1976. The lawsuit here in question sought judgment in the amount due to Town & Country on 10 May 1976 of $5,484.00. The new credit policy of Town & Country upon which Lang placed immense consequence did not originate until more than three months thereafter.

We are of the opinion that the changes in the Town & Country credit policy which occurred subsequent to the conclusion of Lang's credit activities with Town & Country did not bear on the facts or law of the instant case. Accordingly, we need not at this time determine the propriety of the later credit policy, nor examine its legal effect on the remaining credit patrons of Town & Country.

The congressional purpose of enacting the TILA was to require creditors to disclose the true cost of consumer credit, so that consumers could make informed choices among available methods of payment. 15 U.S.C. § 1601 (1974). To facilitate this purpose, the TILA imposed specific credit term disclosure obligations on each of two general classifications of consumer credit plans, "open end" credit plans and "other than open end" credit plans. 15 U.S.C. § 1637 (1974); 15 U.S.C. § 1638 (1974). The Federal Reserve Board was empowered by 15 U.S.C. § 1604 to prescribe regulations to carry out the purposes of the TILA. The text of Regulation Z, as these regulations have come to be known, may be found in 12 CFR § 226.1—§ 226.1503.

The major consequence of a disclosure violation was that the TILA imposed civil liability upon any creditor who failed to comply with the act's requirements. 15 U.S.C. § 1640 (1974). This liability provision was the basis of Lang's counterclaim against the Town & Country. Lang insisted that Town & Country could not rightfully compound finance charges on his credit account because that account was not an "open end" credit account, and that therefore Town & Country was in violation of its disclosed credit terms.

It was not disputed by either party that compounding of finance charges is permissible by the act under an open end credit plan. The Federal Reserve Board has also adhered to this position. A staff letter from Federal Reserve Board assistant director Jerauld C. Kluckman, issued in response to an inquiry into the compounding of finance charges, stated:

"This is in response to your question with respect to the disclosure of annual percentage rates on open-end credit accounts under Regulation Z. Specifically you question whether the regulation permits the disclosure of an annual percentage rate of 18% when the monthly permissible rate is applied to the previous unpaid balance which includes previous unpaid finance charges as well as the original principal balance. *Regulation Z does not preclude a creditor from assessing a finance charge on a previously unpaid finance charge under an open-end account plan.* The annual percentage rate to be disclosed would be the same whether or not the balance on which the finance charge is computed includes previously unpaid finance charges. . ." [Emphasis ours.] F.R.B. letter No. 616, CCH Consumer Credit Guide ¶ 30,864 (June 22, 1972).

Although the Federal Reserve Board's interpretation of TILA is not binding upon the courts, it should be accorded substantial deference in any judicial construction of the act. *United States v. Bristol Hills Apartments,* 461 F.Supp. 1179 (E.D.Mich.1978).

We are in agreement with both the parties of this case and the Federal Reserve

Board staff that TILA permits the compounding of finance charges under an open end credit arrangement, provided the appropriate credit disclosures are passed on to the consumer. Our first task, therefore, is to determine whether or not the credit agreement in this case was an open end credit plan, and second, if this initial query is answered affirmatively, whether or not the credit disclosure requirements were met by Town & Country. If the arrangement here was an open end account and the necessary disclosures were made by Town & Country, then the compounding of finance charges was permissible, and as a result there was no violation of the TILA, and Town & Country was not liable to Lang under the civil liability provisions of the TILA.

Regulation Z, 12 CFR § 226.2(x), promulgated under the TILA, defines "open-end credit" to mean:

> "[C]onsumer credit extended on an account pursuant to a plan under which (1) the creditor may permit the customer to make purchases or obtain loans, from time to time, directly from the creditor or indirectly by use of a credit card, check, or other device, as the plan may provide; (2) the customer has the privilege of paying the balance in full or in installments; and (3) the finance charge may be computed by the creditor from time to time on an outstanding unpaid balance."

■ Thus, the term "open-end credit" means credit extended pursuant to a plan providing for and contemplating continuing or repetitive transactions on credit. The regulations clearly indicate that there be a "plan" providing for the continuing credit purchases. This distinguishes single-purchase transactions, which are subject to more stringent disclosure requirements under the TILA as "sales not under open end credit plans", from transactions made under revolving or continuing credit arrangements, such as under credit cards or charge accounts, as to which such extensive disclosures are not practicable. *Maes v. Motivation For Tomorrow, Inc.*, 356 F.Supp. 47 (N.D.Cal.1973); 15 U.S.C. § 1601 et seq.

(1974). See also, *State, Etc. v. Hintz*, 281 N.W.2d 564 (N.D.1979).

■ We believe that the credit agreement in existence between Lang and Town & Country during the period of time in which all of the transactions which are the subject of this matter were made was an open end credit arrangement within the meaning of the TILA definition. First, Town & Country permitted Lang to make credit purchases from time to time on his account. As we noted above, Lang made 221 separate credit purchases on his Town & Country account over the years. Credit acquisitions of this repetitive nature were precisely the type of "from time to time" purchases contemplated by the Regulation Z circumscriptions. Thus, the first trait of open end credit was present.

We also are convinced that the credit policy of Town & Country existing at the time of Lang's credit purchases granted Lang the privilege of paying his outstanding balance either in full or in installments. Lang argued at great length that the credit policy did not grant this privilege because, while it did allow convenience credit for a period of 30 days, it required all payments to be made in full by the 10th day of the following month. This argument is not persuasive in light of the facts in the instant matter.

As noted previously, the credit policy to which Lang referred was effectuated on 20 August 1976, three months subsequent to the close of his credit transactions with Town & Country. The credit policy of Town & Country which was in effect at all times during which credit transactions were made between Lang and Town & Country provided simply that if the amount for which credit was extended was not received before the following month's closing date, a finance charge of 1% would be assessed on the past due balance. Unlike the later policy adopted by Town & Country, the then-existing credit policy contained no "payment due in full" requirement, and no automatic termination of credit if that full payment was not timely made. The only disadvantage of failing to pay the outstanding

balance in full under the then-existing policy was the imposition by Town & Country of a finance charge. We do not think that the intimidation of a Town & Country finance charge assessment constituted a demand that all accounts be paid in full rather than by installments.

On 26 September 1972, Lang made a payment to Town & Country of $3,000. This payment, along with credits to his account in the amount of $32.90, paid Lang's Town & Country credit balance in full. Further, on nine separate occasions between 9 April 1972 and 10 May 1976, Lang made payments on his Town & Country credit account ranging from $28,042.27 to $10.38. At no time during this period was the account paid in full. The record thus indicates that, in fact, Lang was freely permitted to pay his Town & Country credit account balance either in full or in installment payments.

Finally, Town & Country computed a 1% finance charge on Lang's outstanding unpaid balance at the end of each monthly closing date. This met the final essential for open end credit status under the TILA definition. For these reasons, we agree with the trial court's ruling that the account of Ernest Lang at Town & Country was an open end credit account.

Therefore, having so concluded, we must now inspect the Town & Country disclosure notices to test their compliance with the TILA.

The required creditor disclosure under an open end consumer credit plan is found in 15 U.S.C. § 1637 (1974), and in Regulation Z, 12 CFR § 226.7 (1979). Under the guidelines of these statutes, Town & Country was directed to inform each of its credit patrons of the terms and conditions of its credit policy both before any account was opened by a particular patron, and at the end of each billing cycle for which there was an outstanding balance on that patron's credit account. The required disclosures dealt primarily with the conditions under which a finance charge could be imposed, and the method of determining the total amount on which the finance charge would be imposed.

Town & Country informed Lang of its credit policy at the time he established his credit account at the Coop. Lang was notified at that time of the exact monthly billing cycle days, the method by which the balance due to Town & Country was determined, and the amount and purpose of the Town & Country finance charge assessment. Lang was again notified of this credit policy on 5 April 1973, and on 31 October 1975, by credit policy disclosure notices mailed out by the cooperative. Also, at the end of each monthly billing cycle Lang received a statement from Town & Country specifying that month's charges, payments and credits on his Town & Country account. These monthly billing statements further explained to Lang exactly how the past due balance was computed by Town & Country, and how and when the 1% finance charge was imposed.

We believe Town & Country has met the disclosure requirements of the TILA for open-end credit plans. Lang was aware that his credit balance at Town & Country would be subject to a finance charges at the end of each monthly billing cycle. Lang's credit purchases at Town & Country were on an open end credit account. Compounding of finance charges is permitted by the TILA under credit accounts of this type, and we therefore conclude that the court below was correct in ordering judgment for Town & Country in this matter. We affirm.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.