HENRY F. POAGUE, Respondent, v. JOHN MAL-
LORY, Executor, etc., Appellant.

Kansas City Court of Appeals.    December 5, 1921.

1. **APPEAL AND ERROR:** Bill of Exceptions Determines What was Contained in an Account Book Introduced in Evidence as Against Recital Contained in Additional Abstract. The original bill of exceptions, signed by the trial judge, determines what was in fact in plaintiff's book account introduced in evidence, and it must be accepted as its appears, as against an additional abstract filed by respondent showing an additional item.

2. **LIMITATION OF ACTIONS:** Current Accounts: Running Accounts: Lack of Mutuality Does not Prevent Accumulating Indebtedness from Becoming an Account Current Within Meaning of Statute as to Accrual of Action. Under section 1322, Revised Statutes 1919, in

reference to "current accounts" providing that the cause of action on such accounts "shall be deemed to have accrued from the time of the last item in the account on the adverse side," lack of mutuality does not in and of itself, prevent accumulating indebtedness from becoming an account current within the meaning of said section, "when the account sued on is a running account, and it is fairly inferable from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in the case of a merchant's account against a customer."

3. ———: **Claim for Rent Covering Period of 15 Years Held not a Current Account and to be Subject to the Operation of the Statute of Limitations.** Where there was no evidence that deceased knew he was being charged for rent of a room covering a period of 15 years down to the date of his death, and no charge was in fact made until after his death, when suit was brought on a lump charge therefor, such charge did not constitute a "current account" within the meaning of the Statute of Limitations, Revised Statutes 1919, section 1322, so as to save the same from the operation thereof.

4. ———: **Claim for Rent, of Which no Account was Kept, and Claim for Legal Services Relate to Separate and Distinct Matters and do not Constitute a Single, Open, Running Account.** Plaintiffs claim for rent of the room, and the charges for legal services rendered deceased, did not constitute a single, open, running account within the meaning of the Statute of Limitations, section 1322, Revised Statutes 1919, as said claim was not so treated, even by plaintiff, until he brought suit, and the rent was not even kept as an account at all, but only inserted as a lump sum in the claim sued on at which time demand therefor was asserted for first time.

5. **INSTRUCTIONS: An Instruction Authorizing Jury to Reject Testimony of Witness Testifying Falsely is Erroneous when Qualifying Words Omitted Requiring Jury to Find his Testimony to be Willfully or Knowingly Given.** An instruction which told the jury that if they believed "any witness has sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony," is erroneous in that it omits the qualifying words requiring the jury to believe the witness has "willfully" or "knowingly" testified falsely before they can disregard the whole of his testimony.

6. ———: **An Instruction Applicable to Only One Witness Authorizing Jury to Disregard False Testimony Without Qualifying Words Reversible Error.** An instruction that if any witness swore falsely to any material fact the jury were at liberty to reject all or any portion of his testimony was not harmless error where the instruction could have been applied by jury to only one witness, as

such witness might have been honestly mistaken as to a part of the testimony.

7. WITNESSES: Executors and Administrators: In a Suit Against Executor, Plaintiff Incompetent to Testify that Witness was not Present at Conversation Between Him and Deceased and That no Such Conversation Took Place. In a suit where an executor was a party, under section 5410, Revised Statutes 1919, plaintiff was incompetent to testify that a witness testifying for defendant was not present at a certain conversation between him and deceased, and that no such conversation as detailed by said witness took place.

8. ———: ———: Where Over Objection and Exception of Plaintiff, Court Expressly Ruled Witness Competent to Testify, no Further Objection or Exception was Necessary. Where trial court over defendant's objection, expressly ruled that plaintiff was a competent witness to contradict a witness for defendant as to a conversation she said she heard between plaintiff and deceased, and defendant excepted to the ruling, no further objection or exception was necessary, under the rule that where an objection has once been made and the court has explicitly and clearly ruled on the matter, the necessity of making further objections is obviated.

9. ———: Chief Beneficiary Under Will of Deceased not Incompetent to Testify to Conversation Between Plaintiff and Deceased. A witness who was the chief beneficiary under deceased's will, and, in that sense, was claiming under him, was not an incompetent witness to testify to a conversation between deceased and plaintiff, as it is the survivor, or any person claiming under him, that section 5410, Revised Statutes 1919, diqualifies, the plaintiff in this case being the survivor.

10. ———: The Admissibility of Testimony of Chief Beneficiary of Deceased Does not Waive or Remove Incompetency of Plaintiff. The admission of the testimony of the chief beneficiary under the will of deceased concerning a conversation between plaintiff and deceased, in an action against the executor, did not waive or remove the incompetency of plaintiff to testify under section 5410, Revised Statutes 1919, there being no provision to that effect in statute.

11. COURTS: Where There Was no Ruling Made in Opinion by Supreme Court on Point Involved, Court of Appeals is not Bound to Follow Observations Contained Therein with Respect Thereto. While it may be duty of Court of Appeals to follow clearly specified rulings laid down by Supreme Court, even though the same be *obiter*, or are not necessary to a determination of the case in which they are made, yet where no such ruling on the point here involved, or claimed to be involved, was made in opinion by Supreme Court, nor

concurred in by a majority of the judges thereof, the Court of Appeals is not bound to follow observations made therein with respect to any such point.

Appeal from the Circuit Court of Henry County.— *Hon. C. A. Calvird,* Judge.

REVERSED AND REMANDED.

*J. C. Hargus* and *Parks & Sons* for respondent.

*Culver, Phillips & Voorhees* for appellant.

TRIMBLE, P. J.—This action originated in the probate court, upon a demand filed against the estate of John W. Penland, deceased, for the aggregate sum of $1589. This amount is made up of $1080 alleged to be due for rent of a room occupied by deceased from May 1, 1905, to May 1, 1920, at $6 per month, and $509 for legal services rendered deceased from October 16, 1909, to December 13, 1917. Upon a trial in the circuit court on appeal, the jury returned a verdict in the full amount of the demand; and the executor has appealed.

Penland died April 5, 1920, and the demand was filed May 4, thereafter. The defendant interposed the Statute of Limitation as to all that part of the claim for rent which had accrued more than five years prior to the institution of the suit. Plaintiff's theory, however, is that by virtue of section 1322, Revised Statutes 1919, the Statute of Limitations does not operate to bar any part of the claim. Said section 1322 is in reference to "current accounts" and provides that in an action to recover the balance due on such an account, the cause of action "shall be deemed to have accrued from the time of the last item in the account on the adverse side."

The account *sued on,* that is, as it is embodied in the demand, makes no reference to rent except in the first item thereof which reads as follows:

"1.   For rent of room occupied by deceased from May 1, 1905 to May 1, 1920, at six dollars per month, .......................... $1080.00."

The next item, dated October 16, 1909, is for *legal services* and this is followed by twenty-one other items for legal services, the last item thereof being dated December 13, 1917. In other words, the only mention of rent in the claim as sued upon is in the first item which is a lump charge of $1080 therefor covering a period of fifteen years.

Plaintiff introduced in evidence his account book, but, as shown by appellant's abstract, there is no entry therein of a charge for rent, but only for *legal services*. In other words, the account there shown is one for legal services only, and it contains exactly the same items as in the demand sued on except that in the account book there is no entry of the first item or lump charge of rent in the sum of $1080 or any other sums.

Respondent, however, filed an additional abstract which shows that the account in defendant's book contained an item of rent appearing in the account immediately after two items for legal services dated in July, 1913, and just before another item for legal services of July 30, 1913, which alleged rent item reads as follows:

"July 30, 1913, J. W. Penland amount rent room June 4, 1913, at 6% per month . . ."

Appellant filed objections to said additional abstract and called our attention to the original bill of exceptions filed in the trial court, which original bill was lodged with the Clerk of our court. Said original bill of exceptions shows that the plaintiff's account book, introduced in evidence, contained an account for legal services in the exact form of the account for legal services shown in the demand sued on, but said book account did not contain any mention of rent or item thereof whatever. As the original bill of exceptions, signed by the trial judge, determines what was in fact in the book account introduced in evidence, we must accept the account as it appears without any rent item therein.

Penland held plaintiff's note for $10,000 dated December 4, 1905, due 5 years after date, bearing six per

cent compound interest per annum from date until paid. Plaintiff paid interest thereon without deducting anything due him either for rent or for legal services rendered. On April 20, 1912, he paid $1000 on the principal, reducing it to $9000. On November 20, 1917, a little over two years before Penland's death, the latter made a written extension of the note for ten years from December 4, 1917, at five-one-half per cent interest. Defendant introduced evidence tending to show that Penland, when asked to make the extension, told plaintiff he would agree to the extension because he had not been charged anything for rent. However, as the verdict was adverse to defendant upon the issue of whether plaintiff *intended* to charge any rent, doubtless this cannot be accepted as true. There was, however, no evidence nor claim that Penland ever knew plaintiff was charging him any rent. There is no evidence that rent was ever demanded of or charged against Penland until after his death when suit was brought, and then the only entry ever made in relation to rent appears in item 1 of the claimed filed as a demand.

There is no evidence tending to show that the parties, i. e., plaintiff and Penland, ever treated the rent, or any charges therefor, as constituting an open, mutual, current account so as to bring the rent matter within the meaning of section 1322. In their dealings there were no mutual charges, that is, no charges or debts of Penland against plaintiff offset against the latter's debts to Penland; all of the items of indebtedness in this so called account are against Penland. This lack of mutuality does not, in and of itself, under our Missouri rule, prevent accumulating indebtednesses from becoming an account current within the meaning of said section "when the account sued on is a running account, and it is fairly inferable from the conduct of the parties while the account was accruing, that the whole was to be regarded as one, as in the case of a merchant's account against a customer." [Ring v. Jamison, 66 Mo. 424, 428; Chadwick v. Chadwick, 115 Mo. 581, 586.]

As to the rent, even plaintiff himself did not manifest any intent to formulate it into an open, current or running account, for he kept no account of it as he did of the legal services rendered and his own witnesses say no demand was ever made for rent. We do not mean to intimate that accumulating one-sided indebtednesses will not constitute a current account *merely* because no entry thereof has been made in the form of an account in a book of accounts or some such record. There are numerous cases where an account for long continued services was allowed as an account current which had never been kept in the shape of an account formally entered in writing upon a record. But in such cases the continued acceptance of the services under an implied obligation that they would be paid for, together with circumstances showing it could be treated as a running account, and *with nothing to interfere with or meet that inference,* rendered it permissible to infer from such conduct that the parties contemplated that the matter should be allowed to run and be settled at a future time. In this case, however, there is not only no evidence from which it can be inferred that the sums for rent accruing each month were to go into a running account, but the dealings between the parties rather negative such idea. As said before, there is no evidence that Penland knew he was being charged for rent, and in fact he could not know it since no charge was in fact ever made until after his death, when suit was brought on a lump charge of $1080 therefor. And plaintiff paid interest without intimating in any way that Penland owed him. Under these circumstances the mere fact that Penland occupied the room down to the date of his death does not show that there was any express or implied agreement that the sums accruing each month as rent should go into a current account and be settled at some future time. In other words, there is no evidence from which it can be said "that the conduct of the parties makes it fairly inferable that it was their intention to have a future adjustment." [Earls v. Earls, 182 S. W. 1018, 1020.] Unless there was, then the various indebted-

nesses for rent, accruing each month, did not go into such an account as would save, from the limitation statute, any item of plaintiff's claim for rent which was more than five years old at the time of filing suit. The mere fact that Penland continued to occupy the room down to the day he died did not make that or any other date the *accrual date* of all the monthly debts for rent.

Nor can it be said that the claim for rent of the room, and the charges for legal services rendered, constitute but a *single,* open, running account, and as the last item of the account for legal services is dated December 13, 1917, a date within the 5-year period, no part of the demand is barred.

The claim for rent and the charges for services do not form one account. As said before they were not so treated, even by plaintiff, until he came to bring suit. They relate to wholly separate and distinct matters; their characters are entirely different; they have no connection whatever with each other; and the rent was not even kept as an account at all, but only inserted as a lump sum in the claim sued on, as if a demand therefor were being asserted for the first time, which in fact is the case, since plaintiff's own witnesses say no rent was ever demanded of Penland. Under all these circumstances there would seem to be no room for holding that the two, the claim for rent and the account for legal services, can be regarded or treated as *one* account. [Earls v. Earls, supra; Sidway v. Missouri Land, etc., Co., 187 Mo. 649, 670; Mabary v. Mabary, 173 Mo. App. 437, 448; 22 Cyc. 1122, note 8.] There should be some evidence tending to show that the rent was regarded as a running account before the five year limitations can be avoided.

An instruction given in plaintiff's behalf told the jury that if they believed "any witness has sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony." The instruction omits to tell the jury they must believe the witness has "willfully" or "knowingly" testified falsely before they can disregard the whole of his testimony. It has been re-

peatedly held that if such an instruction omits these qualifying words, it is error. [Smith v. Wabash R. Co., 19 Mo. App. 120, 125; State v. Palmer, 88 Mo. 568, 572; State v. Elkins, 63 Mo. 159, 166; Jackson v. Powell, 110 Mo. App. 249, 253; Bordeaux v. Hartman, etc., Co., 115 Mo. App. 556, 565; Evans v. St. Louis, etc., R. Co., 16 Mo. App. 522, 525.] It is urged that the omission does not constitute reversible error, since no harm was done. We cannot so say. It is conceded that the instruction could have been applied by the jury to only one witness, one introduced by the defendant. Even if, in such situation, an instruction of the kind is permissible and will not be regarded by the jury as, in effect, an unfavorable intimation as to that witness's testimony, still such witness might have been honestly mistaken as to a part of the testimony and yet, under the instruction, the jury were at liberty to disregard the whole of such witness's testimony if they believed that any part thereof was merely untrue.

Mrs. Mallory, the decedent's niece and the chief legatee under his will, receiving some $40,000, and residuary beneficiary of the balance of his estate on final settlement, was offered as a witness by defendant, and testified without objection to the conversation between plaintiff and deceased relative to his extension of the above-mentioned note in view of plaintiff's not having charged him rent. In rebuttal, plaintiff was allowed to testify that Mrs. Mallory was not present and that no such conversation took place, and defendant complains of this as error.

*In this case an executor is a party,* and it would seem that under the provision of section 5410, Revised Statutes 1919, relative to that situation, the plaintiff was disqualified as a witness *for all purposes,* except to prove in whose handwriting the account charges were and when made, and except as to such acts and contracts as had been done or made since the appointment of the executor. [Weiermueller v. Scullin, 203 Mo. 466, 474; Kersey v. O'Day, 173 Mo. 560, 570; Leeper v. Taylor, 111 Mo. 312, 323.]

In the Weiermueller case, just cited, the court calls attention to the "distinction (arbitrary as it is) between the rule which is applicable to the surviving party to the contract where an administrator is a party to the action" and the rule in other cases, and bases such distinction upon the fact that the statute itself so provides.

The evidence complained of did not come within any of these exceptions and hence the plaintiff was not a competent witness to testify to it. Even if an executor had not been a party, and the plaintiff, for that reason, had not been incompetent for all purposes, but only to the extent that his testimony might be subject to question by the other party, if living (Elsea v. Smith, 273 Mo. 396, 408), still he was not competent to dispute the fact of such conversation or to deny that it occurred. [Parsons v. Harvey, 281 Mo. 413.]

Plaintiff, however, urges two reasons why the admission of such evidence was not reversibly erroneous. First, that no objection was made to the two specific questions which elicited the evidence that Mrs. Mallory was not present and that no such conversation between plaintiff and deceased ever took place. When plaintiff was first offered as a witness in chief, a general objection was made to his being allowed to testify but when it was stated that the only purpose of offering him was to identify the account book, the court overruled the objection, and identification of such book was all that was then elicited or sought.

Afterwards, in rebuttal, plaintiff was offered as a witness and a general objection was again made to his testifying, but when plaintiff's counsel suggested to the court that plaintiff had the right to testify to an independent matter, the objection was overruled, the defendant excepting.

Evidence was then sought to be elicited from plaintiff to the effect that a sum paid by deceased to plaintiff, (which defendant's evidence said was in payment of a certain item for legal services charged in the account), was merely the *expenses* of recording the docu-

ments involved in the matter in which the services were rendered. A general objection was again made to his testifying, but the court overruled it and defendant excepted.

The plaintiff was then asked by his counsel if he got any more out of the matter than the amount of the check he had identified. (This, of course, was to show that he had not been paid for the service.) To this defendant objected but was overruled. The plaintiff was then asked the same question in a different form and the defendant again objected and was again overruled, and exception was saved.

Plaintiff was then asked to state whether or not at the time the interest was reduced on his note to Penland, he, plaintiff, could have gotten the money elsewhere. To this defendant objected. Plaintiff's counsel then said that, in that connection, he wanted to show that plaintiff notified Penland he could do it—i. e., get the money at five and one-half per cent, and that then Mr. Penland made the reduction. To this the defendant's counsel objected on the ground that the "witness is incompetent, the other party being dead."

To this objection the court ruled: "I think he is incompetent as a witness to testify to any transaction between them, *but that was testified to by a witness who testified as to what took place while she was present; I will admit it in-so-far as it might contradict the other witness.*" To this ruling the defendant excepted.

Plaintiff was then asked whether he could have gotten the money at five and one-half per cent and stated, without objection, that he could. But when an offer was made to show that he told Penland this and Penland agreed to extend the note, the defendant made the same objection and was sustained. Then the two questions were asked which elicited the evidence now complained of, but no objection was made nor exceptions saved. It would seem, however, that as the trial court had *expressly ruled* that the plaintiff was a competent witness to contradict Mrs. Mallory as to a conversation she said she had heard

between plaintiff and deceased, therefore no further objection or exception was necessary, under the rule that where an objection has *once been* made and the court has explicitly and clearly ruled on the matter, the necessity of making further objections is obviated. It follows that the error in admitting the evidence cannot be avoided on the ground that no objection was made. As the case is to be remanded anyway for another reason hereinbefore stated, it would seem to make little difference in the immediate disposition of the case whether or not there was an objection and exception properly made and saved to the error now considered; but it might have some ultimate bearing upon the case when tried again in connection with the question whether such incompetent testimony had been "waived" by defendant as plaintiff claims on the theory advanced by him and now to be considered. There can certainly be no contention that defendant waived the competency of such evidence by failing to object.

Plaintiff's second reason why such admission is not error is that such incompetency was waived. This contention proceeds upon the assumption that Mrs. Mallory was herself an incompetent witness, and that defendant, by putting her on the stand and causing her to testify to forbidden matters, thereby opened the door to plaintiff to also enter, at least for the purpose of contradicting her. Plaintiff, however, did more than this, he testified not only that Mrs. Mallory was not present but also that no such conversation between himself and deceased ever took place. But, aside from this, was Mrs. Mallory an incompetent witness? She was the chief beneficiary under the deceased's will, and, in that sense, was claiming under him. But the statute disqualifies the *survivor*, or any person claiming under *him*, and it is the *plaintiff* who is such survivor. We do not think that, in this case, Mrs. Mallory was an incompetent witness.

But if we understand plaintiff's contention in this regard it is that as Mrs. Mallory gets the larger portion of the decedent's estate, she is, like him, interested in de-

feating the plaintiff's claim. She takes the decedent's place and stands in his shoes so to speak, at least with regard to the cause of action, if not with regard to the conversation between plaintiff and deceased; and, therefore, as the plaintiff is incompetent, in a spirit of fairness she is or ought to be also; and as she testified to a conversation between plaintiff and deceased in his lifetime, plaintiff should be allowed to contradict her, else he is placed at a disadvantage and the parties are not on an equal footing. The answer to this is, we are not dealing with what is fair, but with the command of a statute, and the statute does not so read, and we know of no authority which establishes such a rule. This idea advanced by plaintiff seems to have been derived from certain remarks made in the case of Mason v. Mason, 231 S. W. 971, 975. In that case, however, the testimony was in relation to a conversation between the plaintiff and the defendant had *after the death of the decedent*, and not to a conversation had *with the deceased himself* in his lifetime involving the cause of action at issue. In that case the plaintiff, Mason, was seeking to set aside a deed made by his father, in his lifetime, to the defendant; and he sought to establish his case by proving admissions made by defendant to plaintiff after the father's death. The court held that the defendant (grantee of the father and therefore the surviving party to that transaction), was not rendered incompetent to deny that she made the admission the plaintiff claimed she made to him after the father's death, following Elsea v. Smith, supra. The Mason case is wholly unlike the case at bar, as we view them. However, in the Mason case, after it was decided, certain observations were made on page 975 of the 231st S. W. Reporter which are cited by plaintiff in the case at bar, to justify the admission of the evidence complained herein. We do not think they do. Besides, it will be observed that only two of the four judges concurred in the opinion, the other two concurring only in the result. While it may be our duty to follow clearly specified rulings laid down by the Supreme Court, even though the same may be *obiter*

or are not necessary to a determination of the case in which they are made, yet, as we understand it, no ruling on the point here involved or claimed to be involved, was made in the Mason case, nor was it concurred in by a majority of the judges. The admissibility of plaintiff's evidence in the regard complained of cannot, therefore, be disposed of on the ground that it has been settled by the Mason case, but must be decided upon its own merits, since no other case has been cited, nor are we aware of any other. The only ground on which plaintiff's testimony as to the matters herein complained of can be said to be admissible is that it is unfair and does not place the parties on an equal footing. The statute, however, is explicit and governs.

This disposes of the main questions in the case. Other alleged errors are complained of, but they are not such matters as will be repeated at the next trial, and hence we need not mention them now.

The judgment is reversed and the cause is remanded for a new trial. The other judges concur.