**Roger BERLIN, M.D., Appellant,**

**v.**

**William PICKETT and William H. Pickett, P.C., Respondents.**

**No. WD 65816.**

Missouri Court of Appeals,
Western District.

Aug. 15, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 26, 2006.

Application for Transfer Denied
Oct. 31, 2006.

David Jay Weimer, Kansas City, MO, arguing on behalf of appellant.

David Thurman Greis, Kansas City, MO, arguing on behalf of respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

Roger Berlin, M.D. filed an action on account against lawyer William H. Pickett, an individual, and Pickett's professional corporation, William H. Pickett, P.C. (col- lectively, "Lawyers"), seeking payment for expert witness services Dr. Berlin had pro- vided over several years.[1] The trial court, in a bench tried case, granted Lawyers' oral motion for a "directed verdict and/or judgment" at the close of plaintiff's evi- dence. Following an earlier remand for specific findings of fact, we again reverse and remand.

## Factual and Procedural Background [2]

The facts presented here are based on the testimony of Roger Berlin, M.D. Be- cause the trial court granted the motion for judgment at the close of plaintiff's case, Lawyers presented no witnesses. Thus, although we consider the evidence in a light favorable to the judgment, we have only the plaintiff's evidence and the defen- dants' cross-examination thereof.

In 1972, Defendant William Pickett dis- cussed with Dr. Berlin the possibility of employing him as a consultant and expert witness in a personal injury case. Accord- ing to Berlin's testimony, Pickett indicated that he would pay for the services. Law- yers sent the first client to Berlin in 1972, and thereafter many others. Berlin testi- fied that at Lawyers' request, he conduct- ed psychiatric evaluations of over 150 of Lawyers' clients. Berlin testified that he also, at Lawyers' request, gave depositions and trial testimony in many of the person- al injury lawsuits brought by these clients. He prepared itemized bills of his services, which he sent to Lawyers. The corpora- tion paid Berlin with checks. About 1986, fourteen years after the arrangement be-

---

1. The trial court did not address the issue of William H. Pickett's individual liability sepa- rate from that of the corporation. Although Pickett, the individual, protests that he has no liability, he also does not attempt to separate- ly analyze the individual liability issue. Thus, we sometimes refer to both defendants togeth- er as "Lawyers" without attempting differen- tiation.

2. Portions of the factual and procedural back- ground are taken without further attribution from the Honorable Harold L. Lowenstein's opinion in the earlier appeal of this case, *Berlin v. Pickett*, 100 S.W.3d 163 (Mo.App. 2003).

gan, Lawyers ceased sending regular payments for Berlin's services.

By November 1996, when Lawyers' debt had grown to $55,225, Berlin ceased providing services. Berlin discussed Lawyers' arrearage with Mr. Pickett and sent dunning letters. During one conversation, according to Berlin, Mr. Pickett promised to send payment in thirty days, but he did not do so. According to Berlin, neither Mr. Pickett nor anyone in his firm ever objected to any of the charges prior to the filing of this lawsuit.

On July 1, 1999, Berlin filed this action, seeking damages for unpaid services provided to more than thirty clients. After Berlin filed suit, Lawyers sent four checks totaling $1300, drawn on the account of William H. Pickett, P.C.

In answer to the petition, Lawyers raised the statute of limitations as an affirmative defense. According to Lawyers, each client's services constituted a separate contract. Lawyers pointed to the fact that Berlin's itemized bills were separated by individual clients rather than aggregated into a single bill. Lawyers said that liability for services provided more than five years before Berlin filed his petition was unenforceable because of the expiration of the limitations period in section 516.120(1).[3] Lawyers also moved for summary judgment as to claims representing $42,914, which Lawyers claim were time-barred. Lawyers argued that only claims for those services provided on or after July 1, 1994, were not time-barred.

In his suggestions in opposition, Berlin responded that his action was an action on a single open account. Berlin pointed out that an action on a single account does not accrue until the date of the last service provided, citing *Lowenstein v. Widdicomb*, 52 S.W.2d 1044, 1046 (Mo.App.1932). Because the last date of service provided fell within the five-year limitations period, Berlin argued that the statute of limitations did not bar any of his claims. The court denied Lawyers' motion.

At trial, Berlin introduced documentary evidence and testified about the individual charges that comprised the balance due on the account. Berlin also introduced evidence of William H. Pickett, P.C.'s pretrial admissions that Berlin charged a reasonable hourly rate. He testified that the records Lawyers gave him to review totaled over 11,000 pages. He attempted to testify that the time he took to review the records was reasonable, but Lawyers' objection to the proposed testimony was sustained.

After Berlin presented his case, Lawyers moved for a "directed verdict" (a motion for judgment). Lawyers still claimed that the evidence did not show the establishment of an ongoing account, but rather "a series of different contractual relationships." Thus, Lawyers argued, each client matter for which Lawyers engaged Berlin was a separate contract, and those contracts that were completed more than five years before the filing of this action were time-barred. Lawyers also argued that even if the statute of limitations did not bar much of the amount claimed, the total claim should be denied because Berlin did not establish the reasonableness of the charges.

The trial court granted Lawyers' motion and entered judgment in favor of both defendants. Despite Lawyers' timely request for findings of fact and conclusions of law, the court did not make any findings

**3.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise noted.

of fact or explain the grounds for its decision. Berlin appealed.

In addition to contesting Lawyers' statute of limitations argument and asserting that he had proven all the elements for a successful action on account, Berlin argued that the court's failure to make findings of fact made remand necessary. We reversed and remanded for specific findings of fact. *Berlin v. Pickett,* 100 S.W.3d 163, 167 (Mo.App.2003).

On remand, the trial court specified in its findings and conclusions that the evidence presented did not establish the existence of "single continuous account." The court also concluded that the accounts could not be considered to be separate accounts (so as to provide partial relief from the statute of limitations), because Berlin had not pleaded separate accounts. Finally, the court found that Berlin did not prove the "reasonableness of the charges" he sought to recover.

Berlin again appeals.

### Discussion

Dr. Berlin contests all three of the court's findings on appeal. Because we find that the court erred in applying the law in determining whether the claimed charges were barred by the statute of limitations, we reverse and remand for a new trial.

### *Standard of Review*

■ As we stated in the earlier appeal of this case, a motion for a directed verdict in a non-jury case submits the case for a judgment on the merits. *Berlin,* 100 S.W.3d at 165, n. 1 (*citing Temple v. McCaughen & Burr, Inc.,* 839 S.W.2d 322, 325 (Mo.App.1992)). This court considers such a motion "to be a motion for a judgment pursuant to Rule 73.01." *Nautilus Ins. Co. v. I–70 Used Cars, Inc.,* 154 S.W.3d 521, 527 (Mo.App.2005). Rule 73.01(b) permits the defendant, at the close of plaintiff's evidence, to move for judgment on the grounds that upon the facts and the law the plaintiff is not entitled to relief. Thus, we review the case under the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *Nautilus,* 154 S.W.3d at 527. Under that standard, the judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32.

### *Existence of a Single Open Account*

■ Berlin first argues that the trial court misapplied the law in finding that he did not prove the existence of a single, continuous, open account. He says that because the last service in the single account was furnished within the past five years, the entire amount of unpaid charges may be claimed without a statutory bar. He says he presented business records and admissions that proved an established and on-going relationship with Lawyers and that he rendered services over a period of time with no break in continuity, thereby establishing a single account.

■ An action on account is an action at law, based in contract. *Austin v. Pickett,* 87 S.W.3d 343, 347 (Mo.App.2002); *see* 1 Am.Jur.2d *Accounts & Accounting* § 8 (2005). An action on account "is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid." 1 Am.Jur.2d *Accounts & Accounting* § 8. The plaintiff has the burden of making a submissible case by establishing proof of an offer, an acceptance, consideration, correctness of the account, and the reasonableness of the charges. *Helmtec Indus., Inc. v. Motorcycle Stuff, Inc.,* 857 S.W.2d 334, 335 (Mo. App.1993). The plaintiff must prove that

the defendant requested him to furnish services, that he accepted defendant's offer by furnishing such services, and that the charges for those services were reasonable. Austin, 87 S.W.3d at 347. An account may also be proven by oral testimony from a witness who has knowledge of the value of the services rendered, the amount paid, and outstanding balance. *Helmtec,* 857 S.W.2d at 336.

At trial, Berlin testified that he first met Mr. Pickett in 1972 at a trial. Pickett thereafter contacted him and asked Berlin to "assist on a case" involving a client whose hand had been mangled in a machine. Berlin testified that Pickett promised that he would pay for the services rendered in connection with Pickett's client, the patient. Since that time, Berlin said, Pickett had sent him about 150 different matters for consultation and testimony, and sometimes for medical and psychiatric treatment. The professional corporation paid regularly for the services as billed over a period of fourteen years until sometime in 1986, when Lawyers stopped making regular payments.

Berlin introduced the time cards and statements for thirty-five patients that comprised the outstanding balance on the account, and he testified as to their content. Berlin testified that Mr. Pickett had requested his services in relation to those clients and that he had performed the requested services. Berlin maintained a time card for each patient in the same manner as he presumably would for each patient that was not sent by Lawyers. Berlin sent separate bills to Lawyers as to each patient.

The amounts due were not consolidated into a single bill until Berlin was contemplating legal action against Pickett. The statement of account dated December 14, 1999, showed the outstanding balances for each of Lawyers' clients and a "corrected final balance due" of $55,225. Berlin also presented two letters, dated September 28, 1998, and January 26, 1999, in which he informed Lawyers of the outstanding balance amount, reminded them of the previous promises to pay, and requested payment. Berlin testified that Lawyers did not contest the billings, and there was no evidence that Lawyers raised any issue as to the propriety of the billings during the time Berlin was providing the services and sending bills. Berlin testified that, after he filed suit, Lawyers sent checks totaling $1300, again without contesting the reasonableness or accuracy of the amounts charged.

Berlin pleaded a cause of action for money due on account. The issue of whether there was a single ongoing contractual relationship or a series of separate contracts was pertinent only to the defense of the statute of limitations raised by Lawyers. The petition invoked substantive principles of law claiming a right to recover reasonable compensation. We see no reason that Berlin would not have been entitled to plead his theory as a single account, even if the facts were not entirely clear, without risking losing his *entire* claim if the court thought it was not a single account. Rule 55.24 ("All pleadings shall be so construed as to do substantial justice.") The fact that a portion of the claim is barred by the statute of limitations will not prevent a recovery for that part that has not become barred at the time suit is filed. *See* 54 C.J.S. Limitation of Actions § 183 (2005).

In an implied contract action, if all services performed constitute a single, continuous whole, then the cause of action accrues when the last service is performed. *Estate of Holtmeyer v. Piontek,* 913 S.W.2d 352, 356 (Mo.App.1996). Generally, if a defendant can show that the services furnished upon a claim of a single

open account were not continuous or related transactions, the statute of limitations may be applicable to part of the claim. *See Poage v. Parker*, 343 S.W.2d 203, 205 (Mo.App.1961). However, continuousness is not destroyed by a gap or hiatus in services unless, at that time, there was "no present intention of resumption." *Id.* (*citing Minor v. Lillard*, 289 S.W.2d at 6); *see also Estate of Holtmeyer v. Piontek*, 913 S.W.2d 352, 356 (Mo.App.1996) ("hiatus between services" does not necessarily destroy "continuousness"). *See also Lowenstein v. Widdicomb*, 52 S.W.2d 1044, 1046 (Mo.App.1932); *Coburn v. Leon Indus., Inc.*, 764 S.W.2d 510, 512 (Mo.App.1989).

The statute would bar any allegedly separate contractual claims that accrued more than five years before suit was instituted. *See J.D. Streett & Co. v. Bone*, 334 S.W.2d 5, 8 (Mo.1960) and *Helmtec*, 857 S.W.2d at 335. But if it is a single account, the statute does not bar recovery for any services performed as a part of the whole. *Id.*

■ An "open account" is one in which there have been ongoing charges by one party and payments by another party, where the parties have not settled the charges, or where there are running or current dealings between them and the account is kept open in expectation of future dealings. 1 C.J.S. *Account, Action on* § 1 (2005). *See, e.g., Lowenstein*, 52 S.W.2d at 1045–46.

Here, the evidence presented by Berlin showed a course of dealing over twenty years where Lawyers had repeatedly requested Berlin to provide expert psychiatric services for 150 of Lawyers' clients, and Berlin repeatedly provided those services. Berlin points out that, contrary to the trial court's findings, the evidence showed there *was no gap* in services from July 1986 to November 1996—the ten-year period that encompasses the claims in this case.[4] In other words, there was an ongoing provision of services to the different patients referred by Lawyers. All services were related to consultation and expert witness services, and occasionally to treatment of a client. The fact that there were a series of clients over time is not inconsistent with a single account; in fact, a series of transactions is part of what an "open account" is about. *See Lowenstein*, 52 S.W.2d at 1045. The court's finding that there were separate contracts because the services were not continuous has no substantial evidence to support it (at least in the absence of any evidence by Lawyers) and is contrary to the weight of the evidence. *Cf. Coburn*, 764 S.W.2d at 512 (directed verdict on statute of limitations basis properly denied where the evidence of plaintiff could be viewed as a continuous whole and where defendant offered no evidence that services were not continuous). Thus, to the extent that the court found that the services were not a single account because they were not continuous, the court erred.

■ The court, in denying relief to Plaintiff, also seemed to believe that the

---

4. We deny Lawyers' motion to strike two of Berlin's appendix pages, which was taken with the case. "An appendix also may set forth matters pertinent to the issues discussed in the brief *such as* copies of exhibits, excerpts from the written record, and copies of new cases or other pertinent authorities." Rule 84.04(h) (emphasis added). The two pages in question were merely charts drawn up reflecting evidentiary data. We encourage charts, chronologies, diagrams and similar items as long as they accurately reflect the evidence in the case. There is no prohibition on such being included in either the brief itself or the appendix. Berlin's charts are helpful in demonstrating the lack of a gap between the services provided. We also reject Pickett's suggestion that portions of the brief be stricken due to alleged Rule 84.04 violations.

evidence failed to show an open account relationship because of lack of a specific *expressed* agreement to establish an ongoing "charge account" relationship. The court misinterpreted the law in this regard. It is not necessary for the parties to verbally agree, "let's have a continuing open account relationship." An open account is a contract *implied in law* when both parties understand (whether verbally expressed or not) that the work that is performed will be compensated at a reasonable rate. *Austin,* 87 S.W.3d at 347; 1 AM.JUR.2D *Accounts & Accounting* § 8. Berlin's testimony, considered in the absence of any contrary evidence, showed that Pickett and Berlin both anticipated that because of their initial discussions, Berlin was willing to provide the services requested in return for reasonable compensation, and Pickett was willing to pay. A verbalized agreement is not necessary to establish the existence of an open account. 1 AM.JUR.2D *Accounts & Accounting* § 1. Missouri law does not require "an express agreement between the parties" in an implied contract case. *Piontek,* 913 S.W.2d at 355. Where one party accepts services under circumstances that show that the other party expected payment, the law imputes a duty to pay. *Id.*

In *Lowenstein v. Widdicomb,* 52 S.W.2d 1044 (Mo.App.1932), there was also a statute of limitations issue, the resolution of which depended on whether there were separate contracts for medical services or a single account. In that case, the defendant, Mrs. Widdicomb, had engaged Dr. Lowenstein to perform a surgical procedure. The doctor charged $250.00 for the surgery, and the patient paid $50.00 toward the bill. About six months later, the patient consulted the doctor at the doctor's office on another matter not related to the surgery. Two months later, she sought further treatment, again unrelated to the surgery. Suit for payment was brought by the doctor more than five years after the original surgery. The defendant and her husband argued that because the services provided were disconnected from one another, the later items did not "connect up" to the earlier surgery so as to make the whole a single account. The court disagreed, holding that it was a single account and that no part of the claim was barred. *Id.* at 1045–46. The court recognized the reality that when a person engages a physician for medical treatment on one matter, it is within the contemplation of both parties that the person may return to the doctor for further services, whether related to the same issue or not. *See Berkshire v. Hall,* 202 S.W. 414, 416 (Mo. App.1918) ("The question is usually decided upon what was *intended or contemplated by the parties at the time the orders were made.*").

Here, the account began with Lawyers sending a single client to Berlin for professional services. The reasonable inference from the evidence is that both parties contemplated that the relationship might extend beyond the single engagement. Lawyers had more than one client, and Berlin had the interest and the availability to do such consultation. Lawyers continued sending more clients, Berlin performed services, and Lawyers, at least for many years, continued to pay for the services. The course of dealing implied, at least *prima facie,* an ongoing "charge account" relationship. The trial court misapplied the law in requiring a specific expressed agreement between the parties to create an ongoing account relationship.

### The Lack Of A Single Ledger

### Is Not Necessarily Inconsistent With A Single Account

The trial court also seemed to believe the issue of single account or sepa-

rate accounts was to a large extent a function of how the billing was conducted. The court apparently believed that the fact that separate records were kept for each client and separate bills were sent as to each client destroyed Berlin's claim of a single account. We believe the law is not that simplistic. "An account refers to the type of relationship between the parties and not to a particular book or record...." 1 AM. JUR.2D *Accounts & Accounting* § 8. It is not required that the accounts be kept in a single ledger. *See Poague v. Mallory*, 208 Mo.App. 395, 235 S.W. 491, 493 (1921). Similarly, it is the implied or expressed understanding between the parties, and not the manner of billing, that determines whether there is one account or many. *See Berkshire*, 202 S.W. at 416 (fact that supplier sent single bill rather than separate bills did not prove a single continuous account). For example, if an owner of an apartment building hires a painting contractor to paint apartments in an apartment complex, and delivers apartment keys to the painter as needed, the method of billing will not determine whether the relationship is one contract or separate contracts. The painting contractor might decide to send a separate bill as to each apartment after the painter has completed the painting of that apartment. Or the painter might consolidate the charges in one bill or several bills. The fact that the painter sends a separate bill each time an apartment is completed will generally be *some evidence* that the arrangement involves separate contracts rather than one contract. *See id.* However, separate bills do not by themselves *prove* that the parties did not contemplate a series of transactions as a continuous whole. *Id.*

If a statute of limitations issue is raised in a case in which there is a question as to part of the account, the *defendant* will have the burden of showing that there is not a single ongoing account but instead the work involved separate contracts, and that the limitations bar is therefore effective. So in this case. The key issue is the nature of the implied understanding between the parties. *See Louisiana & Gulf Lumber Co. v. Myers*, 87 Mo.App. 671, 676 (1901). The court here erred in believing that there had to be an express verbal agreement between the parties to establish an ongoing account. *See, e.g., Lowenstein*, 52 S.W.2d at 1045. The court also erred to the extent the court believed that the evidence showed that the services were not continuous. *See, e.g., Coburn*, 764 S.W.2d at 512. To the extent that the court believed that the method of billing was the key consideration in determining whether it was an ongoing account or separate accounts, that too was error. *See Berkshire*, 202 S.W. at 416. Also, to the extent the court believed that it was Berlin's burden to prove a single account, as opposed to Lawyers' burden to establish their affirmative defense by showing it was not a single account, the court erred.[5]

The issue of the extent to which the statute of limitations applied turned on the factual determination of what the parties contemplated or understood to be the nature of their business relationship. *Coburn v. Leon Indus., Inc.*, 764 S.W.2d 510, 512 (Mo.App.1989). Because the court misapplied the law in making this determination in connection with defendants' motion for judgment at the close of plaintiff's evidence, it is necessary to reverse and remand the case for a new trial. On remand, the court shall consider the additional evidence, if any, and may reassess the evidence of both parties in the light of

---

**5.** The court's findings and conclusions suggest that the court may have viewed the burden of proof on that issue as resting with the plaintiff rather than the defendants.

the applicable principles of law in determining whether there is any bar presented by the statute of limitations, and shall rule accordingly.

### Proof of Reasonableness of the Hours Spent

Berlin also argues that the trial court erred in finding that he did not prove the reasonableness of the charges. He says there was "uncontroverted documentary evidence and admissions" showing that he charged a reasonable hourly rate, spent a reasonable amount of time, and that the total amount due was reasonable. We have already determined that the case must be reversed and remanded for a new trial. However, because this evidentiary issue is likely to recur, we will address it.

While the court did not dispute the reasonableness of the hourly rate charged by Berlin, the court found that the evidence presented by Berlin did not prove the "reasonableness of the number of hours charged" for which he sought to recover. Because this was an action on open account, Berlin needed to prove either that the total charge (as a lump sum) was reasonable, or that the combination of the amount of time spent and the hourly rate was reasonable. *See Massac Envtl. Tech., Inc. v. Futura Coatings, Inc.,* 929 S.W.2d 318, 320 (Mo.App.1996).

Providing professional consultation is not like performing services that produce a visible or tangible product that has a market value. Thus, the notion of proving that the "lump sum" was reasonable would not seem to be a practicable alternative in this case. Therefore, it seems Berlin would have had to prove the reasonableness of both the hourly rate and the reasonableness of the total hours for which compensation is claimed. At trial, Berlin presented evidence of the corporation's pre-trial admissions that Dr. Berlin's hour-

ly rate is reasonable, and the court, in its findings, did not quarrel with the reasonableness of the hourly rate. However, the trial court concluded that Berlin did not prove the reasonableness of the *number of hours* charged.

With regard to the reasonableness of the *number of hours* charged, Berlin testified that the records Lawyers gave him to review in these cases totaled over 11,000 pages, some of which involved complex medical conditions. When Berlin was asked about the reasonableness of the amount of time spent reviewing those records, Lawyers objected, and the court sustained the objection:

Q. [Dr. Berlin's counsel:] Doctor, in your 33 years of experience as a psychiatrist, in your opinion, is it reasonable to spend that amount of time reviewing this number of medical records?

MR. PICKETT: Object, Your Honor. It's vague. It's speculation and has no connection to anything. Calls for speculation.

THE COURT: Sustained.

. . . .

Berlin argues that the trial court improperly sustained this objection. In addition to the objection that the question was vague and called for speculation, Lawyers also objected on the ground that the evidence had "no connection to anything." As for vagueness, we note that the question did not solicit information that would be so vague as to lack probative value. The question was an attempt to elicit an answer that, based on his years of professional experience and his familiarity with the practice of medicine and psychiatry, it was reasonable to spend the amount of time in question on 11,000 pages of medical records in these circumstances. Such an answer would have gone directly to one of the required items of proof. The question

was thus not irrelevant. It did have "a connection" to something. The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). The relevance was clear.

The question also did not call for speculation, in view of the fact that Berlin was personally familiar with the practice of medicine and psychiatry, including services as a medical and psychiatric consultant in legal matters. Berlin was also personally familiar with the files and the records and with the time he expended. Berlin's experience qualified him to testify as to objective reasonableness. *See* 1 AM.JUR.2D *Accounts & Accounting* § 18 (in an action on account, any competent evidence is necessarily admissible to prove the required elements); *see also Austin,* 87 S.W.3d at 347 (plaintiff/doctor testified regarding the reasonableness of his charges).

It appears that the question was asking whether the time spent was reasonable from an objective, professional standpoint. Accordingly, when and if the question recurs on retrial, the testimony should be allowed, as long as it is eliciting Dr. Berlin's opinion as to whether the number of hours was reasonable in accordance with objective professional standards. *Id.*

## Conclusion

For all the foregoing reasons, the judgment of the trial court in favor of Lawyers is reversed. The case is remanded for a new trial in accordance with the opinion of this court.

ULRICH and NEWTON, JJ., concur.